21 A.3d 1142

VASIL KOVALCIK, PLAINTIFF–RESPONDENT, v. SOMERSET
COUNTY PROSECUTOR'S OFFICE, DEFENDANT–
APPELLANT.

Argued May 4, 2011—Decided June 21, 2011.

Scott D. Rodgers, Deputy County Counsel, argued the cause for appellant (Thomas C. Miller, Somerset County Counsel, attorney; Mr. Rodgers and William A. Guhl, Special Deputy Attorney General, on the brief).

Jack J. Venturi argued the cause for respondent (Mr. Venturi, attorney; Kaitlin Kennedy, on the brief).

Lewis A. Scheindlin, Assistant Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Paula T. Dow, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel).

Edward L. Barocas, Legal Director, argued the cause for amicus curiae American Civil Liberties Union of New Jersey Foundation (Mr. Barocas, attorney; Mr. Barocas, Jeanne M. LoCicero, and Bobby D. Conner, on the brief).

Justice HOENS delivered the opinion of the Court.

In this appeal, we consider the scope and application of two of the provisions of the Open Public Records Act (OPRA), N.J.S.A. 47:1A–1 to –13, that create exemptions applicable to the more general requirement that government records be disclosed.

The first of those provisions exempts from disclosure government records that have been deemed to be confidential by a court order, N.J.S.A. 47:1A–1.1. As to that exemption, we are called upon to decide whether an order denying a defendant's motion to compel discovery in a criminal prosecution is the equivalent of an order of confidentiality that brings the requested documents within the exemption.

The second OPRA provision at issue in this appeal exempts personnel records from disclosure, N.J.S.A. 47:1A–10. That exemption, however, includes a number of exceptions and we are called upon to interpret the exception to the personnel records

exemption that requires disclosure of records that "disclose conformity with specific experiential, educational or medical qualifications required for government employment." *Ibid.* In particular, we must decide whether a document that lists courses taken by a job applicant that are not required for the position falls within the exception, with the result that the document must be disclosed, or whether the document instead remains within the exemption's protection from disclosure.

## I.

Following a criminal investigation, the specifics of which are not relevant to our analysis, plaintiff Vasil Kovalcik was indicted for a number of crimes. The investigation had been conducted in part by two detectives from defendant Somerset County Prosecutor's Office, Kristin Houck and Jorge Ramos. In October 2008, as a part of the pre-trial proceedings in the criminal matter, Kovalcik filed a motion seeking to compel the Prosecutor's Office to produce certain documents relating to the two detectives that he had not been able to secure by consent. Specifically, he sought to force the Prosecutor's Office to produce the detectives' curricula vitae, as well as a list of any courses relating to interrogation and confessions that Ramos and Houck had taken.

The record reflects that the motion was denied orally by the criminal division judge, but before that decision was embodied in a written order, Kovalcik served an OPRA request on Barbara Lucas, Custodian of Records for Somerset County, in which he sought the identical records that had been the subject of his motion to compel. In response to the OPRA request, Kovalcik received a timely response from Daniel J. Livak, who was then the Administrator and Custodian of Records for the Prosecutor's Office. Livak's response explained that there were no documents that were responsive to the request but also advised that to the extent that the requested documents were personnel records, they were exempted from OPRA's disclosure requirements.

Plaintiff Kovalcik then instituted this action, proceeding by way of Order to Show Cause and Verified Complaint and seeking to compel release of the requested documents. He revealed that although the motion to compel production in the criminal matter had been denied, he was simultaneously moving for reconsideration in that alternate forum. In opposition to the Order to Show Cause, Livak, who by that time had left his position as the records custodian, certified that he had searched for documents responsive to the OPRA request and had found none. In addition, Beverly Hacker, the Director of the County of Somerset Division of Human Resources, who was responsible for maintaining Somerset County's Employee Personnel Files, also certified that she had reviewed the personnel files for Detectives Ramos and Houck and had found no responsive documents.

Prior to the return date for the Order to Show Cause, Daniel White, who had replaced Livak as the Administrator and Custodian of Records, located documents that he concluded were responsive to the OPRA request. He prepared a certification explaining that he had

> reviewed the contents of the employment background check ... files maintained by the S[omerset] C[ounty] P[rosecutor's] O[ffice] for Detectives Jorge Ramos and Kristen Houck. While the background check file maintained for Detective Jorge Ramos did not contain any document responsive to the subject OPRA request, I did find the attached two-page document reflecting training courses attended by Kristen (Best) Houck prior to the time she became employed with the S[omerset] C[ounty] P[rosecutor's] O[ffice].... [In addition, he had found] attendance certificates on file for Kristen Best for interview and interrogation courses.

The White certification was provided to counsel for Kovalcik, and the certification, along with copies of the newly discovered documents themselves, was provided to the judge who was assigned to hear the Order to Show Cause for the court's in camera inspection.

When the parties appeared on the return date for the Order to Show Cause, the Prosecutor's Office argued that the documents were exempt from disclosure either because the order of the criminal division judge denying the motion to compel brought them within the language of the exemption relating to orders of

confidentiality or because they were exempted personnel records that did not meet the exception relating to required training courses. During the hearing on the Order to Show Cause, the judge quickly rejected the assertion that the criminal judge's order denying the motion to compel discovery served as an order of confidentiality that exempted the documents from disclosure. Turning to the personnel records exemption, the judge inquired about the qualifications needed to be hired as a detective in the Prosecutor's Office. Because White was in the courtroom, the question was eventually posed to him and, although neither the court nor the parties requested that he be placed under oath, he offered a response relating to graduation from the police training academy.

After hearing from the parties, the judge denied Kovalcik's request for an order directing that the documents be disclosed. The court first concluded that the order of the criminal division judge denying the motion to compel was not an order of confidentiality within the contemplation of OPRA's exemption. However, the court found that the records of the courses taken by Detective Houck were personnel records that were exempt from disclosure. Because such records are generally exempt, the court reasoned that they would only be subject to disclosure if they met the description of materials that were excepted from the personnel records exemption. Because that exception was limited to records relating to conformity with qualifications for employment by the Prosecutor's Office, and because the records related to courses other than those that were required, the court concluded that the information did not meet the narrow language of the exception.

On appeal, Kovalcik argued that the trial court erred in concluding that the course list was protected from disclosure by OPRA's personnel records exemption. He asserted that the list instead fell within the exception to the exemption because it disclosed that Houck had conformed with educational qualifications needed for her work as a detective. In addition, he argued that unlike other personnel records that merit protection from disclosure, the docu-

ment in dispute was not one as to which Houck could have a reasonable expectation of privacy. In opposition to those assertions, the Prosecutor's Office continued to press the two arguments it had made at the trial court level, contending that the document was exempt from disclosure by virtue of the order of the criminal division judge and because it was an exempt personnel record to which the exception did not apply.

The Appellate Division affirmed in part and reversed in part. Although agreeing with the trial court that the document was not protected by an order of confidentiality, the panel rejected the argument by the Prosecutor's Office that it was an exempt personnel record. The Appellate Division reached its decision on the latter aspect of OPRA for three reasons.

First, the panel concluded that the Prosecutor's Office fell short of meeting its burden of proving that the denial of access to the course list is authorized by law. That determination was based on the panel's conclusions that the certifications submitted to the court in opposition to the Order to Show Cause were insufficient and that the court's impromptu colloquy with White was "wholly devoid of evidentiary value" because he was not under oath or subject to cross-examination.

Second, the panel rejected the trial court's reading of the language of the exception. Noting that OPRA did not include language that evidenced a clear support for exempting documents relating to education and qualifications, the panel concluded that the public interest in disclosure required that the ambiguity in the exception be resolved in favor of disclosure.

Third, the Appellate Division concluded that disclosure of the course list did not infringe on Houck's privacy rights because the document itself did not contain any private or confidential information, thus militating in favor of disclosure of the document.

We granted the petition for certification that was filed by the Prosecutor's Office, 205 *N.J.* 16, 11 *A.*3d 375 (2010), and we thereafter granted leave to the Attorney General and the Ameri-

can Civil Liberties Union of New Jersey to participate in the appeal as amici curiae.

## II.

We have previously explained the history surrounding the Legislature's enactment of OPRA and the purposes that the statute was designed to achieve. *See Mason v. City of Hoboken*, 196 *N.J.* 51, 64–67, 951 *A.*2d 1017 (2008). We have not previously considered, however, either of the exemptions that are at issue in this appeal.

As we have commented, the purpose behind the Legislature's enactment of OPRA was " 'to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process.' " *Id.* at 64, 951 *A.*2d 1017 (quoting *Asbury Park Press v. Ocean Cnty. Prosecutor's Office*, 374 *N.J.Super.* 312, 329, 864 *A.*2d 446 (Law Div.2004)). OPRA is designed to advance this policy by broadly defining "government records," *N.J.S.A.* 47:1A–1.1, and by publicly declaring that they shall be accessible, *N.J.S.A.* 47:1A–1. Notwithstanding that sweeping declaration, the right to disclosure is not unlimited, because as we have previously found, OPRA itself makes plain that "the public's right of access [is] not absolute." *Educ. Law Ctr. v. N.J. Dep't of Educ.*, 198 *N.J.* 274, 284, 966 *A.*2d 1054 (2009). That conclusion rests on the fact that OPRA exempts numerous categories of documents and information from disclosure. *See, e.g., N.J.S.A.* 47:1A–1.1 (excluding certain categories of documents and information from disclosure); *N.J.S.A.* 47:1A–1.2 (limiting access to biotechnology trade secrets); *N.J.S.A.* 47:1A–3(a) (limiting access to records of ongoing investigations); *N.J.S.A.* 47:1A–10 (limiting access to personnel records). The two exemptions before this Court in this matter illustrate the way in which the statute was designed to operate.

## A.

The Prosecutor's Office first asserts that because the documents were the subject of an unsuccessful motion to compel in the

criminal proceeding, they are exempt from disclosure pursuant to *N.J.S.A.* 47:1A–1.1. That section of the statute excludes "information which is to be kept confidential pursuant to court order" from the definition of "government record," *ibid.,* the result of which is to preclude access to such documents entirely, because OPRA only subjects government records to disclosure, *see N.J.S.A.* 47:1A–1.

The question before this Court, then, is whether the order of the criminal division judge denying a defendant's motion to compel discovery is the equivalent of a confidentiality order as contemplated by OPRA. Our Court Rules grant a criminal defendant an automatic post-indictment right to discovery, *see R.* 3:13–3(c), but impose limits on the materials that may be obtained through the available discovery mechanisms. *R.* 3:13–3(e) (exempting parties' work product from discovery); *R.* 3:13–3(f) (providing that discovery may be limited by protective order to avoid jeopardizing the safety of witnesses or effectiveness of investigation); *see, e.g., State v. Long,* 119 *N.J.* 439, 490, 575 *A.*2d 435 (1990) (holding that considerations of overbreadth and relevance may limit available discovery in criminal proceedings).

In considering whether, in the context of discovery in a criminal proceeding, the denial of a motion to compel is the equivalent of an order of confidentiality that would trigger OPRA's exemption from disclosure, we need look no further than the plain language that the Legislature used in OPRA itself. That is, there is a difference between a decision to deny a motion to compel and one that would cloak the underlying material with the protections of confidentiality. That being so, absent a demonstration that there is an order deeming the information in the documents to be confidential, the document would remain one that is subject to the disclosure obligation imposed by OPRA rather than one statutorily shielded from the public. In light of that plain language used by the Legislature when it crafted the exemption, there can be no doubt that the mere denial of a motion to compel discovery does not suffice as the sort of protective order contemplated by the statute.

Discovery motions are denied for any number of reasons that are unrelated to the confidentiality of the information. *See Long, supra,* 119 *N.J.* at 490, 575 *A.2d* 435 (denying discovery motion on relevance and overbreadth grounds). Although, in the context of discovery in criminal proceedings, a court may deny a motion to compel for reasons that potentially could also support entry of a protective order, *see R.* 3:13–3(f), absent entry of that more specific order, the sought-after information is not deemed confidential.

A similar analysis applies in the context of civil litigation. In that forum, imposition of an order of confidentiality is a remedy that requires consideration of specific factors. *See Hammock ex rel. Hammock v. Hoffmann–LaRoche, Inc.,* 142 *N.J.* 356, 380–83, 662 *A.2d* 546 (1995) (setting forth guidelines governing issuance of confidentiality orders by trial courts). Neither those factors nor the consideration thereof are necessarily relevant to the more routine reasons for denial of a discovery motion. In the absence of some basis on which to conclude that the two are equivalent, there can be no argument that the denial of a discovery motion operates, for OPRA purposes, as an order of confidentiality.

In further support of the argument that the document is exempt from disclosure because of the criminal division judge's denial of the motion to compel discovery, the Prosecutor's Office suggests that there is a general impediment to the use of OPRA by criminal defendants. That argument, echoed by the Attorney General, asserts that criminal defendants, unlike anyone else, are prohibited from availing themselves of the ordinary right to access documents that OPRA otherwise obligates government entities to disclose. Given OPRA's broad purpose and sweeping language, we find no support for that assertion.

Our decision in *State v. Marshall,* 148 *N.J.* 89, 272–75, 690 *A.2d* 1 (1997), on which the Attorney General relies, is not to the contrary; the distinction that we there relied on was focused on the fact that defendant was seeking access to the State's entire investigative file. As we noted, that file was not a government

record, as defined by the Right to Know Law, formerly *N.J.S.A.*
47:1A–1 to –4 (repealed 2002), OPRA's statutory predecessor, and
therefore it was not required to be disclosed. *Marshall, supra,*
148 *N.J.* at 272–73, 690 *A.*2d 1. No similar distinction applies in
this matter. On the contrary, OPRA itself includes two separate
exemptions that relate to documents in criminal matters, neither
of which is implicated here. *See N.J.S.A.* 47:1A–1.1 (exempting
documents protected by court order and criminal investigatory
records, and certain autopsy reports); *N.J.S.A.* 47:1A–3(a) (ex-
empting records of investigations in progress).

Moreover, suggesting that there is some broader limitation on
disclosure, not included in OPRA itself, that relates solely to
criminal defendants, is akin to asking this Court to impose an
added requirement upon OPRA. Indeed, the suggestion is that
this Court limit one's exercise of the statutory right to disclosure
of documents pursuant to OPRA based upon an evaluation of the
requestor's status. We have previously rejected such an approach
in the context of the Right to Know Law, *see Keddie v. Rutgers,*
148 *N.J.* 36, 44, 689 *A.*2d 702 (1997), and find no basis for adopting
a different approach to the clear language of OPRA. More to the
point, were we to agree with the Attorney General's suggestion,
we would be crafting a remedy that would be unenforceable as a
practical matter. That is, were we to impose a limitation on the
use of OPRA that applied to criminal defendants generally, they
could easily evade it by employing others to make requests on
their behalf.

Our review of the record and the plain language of OPRA as
found in the exemption from disclosure of documents protected by
an order of confidentiality, *see N.J.S.A.* 47:1A–1.1, makes it clear
that the order denying the motion to compel entered in the
criminal proceeding does not suffice to exempt the contested
documents from disclosure.

### B.

Alternatively, the Prosecutor's Office argues that the personnel
records exemption protects the document in question from disclo-

sure. Because the statutory exemption relating to personnel records includes exceptions that are the true focus of the debate among the parties to the appeal, we set it forth in full.

> Personnel or pension records not considered government records;  exceptions
>
> Notwithstanding the provisions of *P.L.*1963, *c.* 73 (*C.* 47:1A–1 et seq.) or any other law to the contrary, the personnel or pension records of any individual in the possession of a public agency, including but not limited to records relating to any grievance filed by or against an individual, shall not be considered a government record and shall not be made available for public access, except that:
>
> an individual's name, title, position, salary, payroll record, length of service, date of separation and the reason therefore, and the amount and type of any pension received shall be a government record;
>
> personnel or pension records of any individual shall be accessible when required to be disclosed by another law, when disclosure is essential to the performance of official duties of a person duly authorized by this State or the United States, or when authorized by an individual in interest;  and
>
> data contained in information which disclose conformity with specific experiential, educational or medical qualifications required for government employment or for receipt of a public pension, but not including any detailed medical or psychological information, shall be a government record.
>
> [*N.J.S.A.* 47:1A–10.]

█ The Legislature has declared in this provision that personnel records are, by definition, not classified as government records at all;  any document that qualifies as a personnel record is therefore not subject to being disclosed notwithstanding the other provisions of the statute. The language of this provision, however, also makes it clear that if, and only if, a document otherwise classified as a personnel record fits within one of the three exceptions to the general exemption for personnel records, it becomes subject to disclosure. Using both a plain language analysis as well as an alternative approach based on a law enforcement officer's reasonable expectation of privacy, our Appellate Division has reached the same conclusion. *See N. Jersey Media Group, Inc. v. Bergen Cnty. Prosecutor's Office,* 405 *N.J.Super.* 386, 390, 964 *A.*2d 842 (App.Div.2009) (concluding that records relating to authorization for outside employment of law enforcement personnel were protected from disclosure).

■ Only the last of the three exceptions that are included within the broad exempting language is in issue in this appeal. As before, we begin with a plain language approach to determine whether we can find clear guidance about the Legislature's meaning and intent. In crafting the exception about records that evidence educational qualifications, the Legislature used two precise limiting terms that carefully circumscribe its application. *N.J.S.A.* 47:1A–10. That is, the exception does not authorize disclosure of any and all documents that evidence an employee's educational background or even that evidence an employee's participation in educational pursuits generally. *Ibid.*

Rather, the Legislature chose to use the words "specific" and "required" in a manner that sharply limits the exception's scope. *Ibid.* Those words effectively narrow the mandate of disclosure because they make it plain that only if there is a specific, or particular, educational qualification that is a prerequisite for the job and only if the record demonstrates compliance with that specific requirement is it subject to being disclosed pursuant to OPRA. That plain reading of the exception comports with the underlying intent of the Legislature to make available information that would demonstrate that a government employee lacked a required credential and therefore failed to meet the minimum qualifications for the position. *See, e.g., N. Jersey Media Group, Inc. v. State, Dep't of Pers.,* 389 *N.J.Super.* 527, 537, 913 *A.2d* 853 (Law Div.2006) (concluding that only information included in police officer's employment application that evidenced compliance with educational requirements was to be disclosed pursuant to OPRA).

■ Using this framework, we begin our analysis with the recognition that the document relating to Detective Houck's preemployment training and education is a personnel record. It is therefore exempt from disclosure unless it falls within one of the statutory exemptions. Looking at the plain language of the third exception, the document in dispute can only be found to be within the exception to the exemption if it discloses, and only to the extent that it discloses, that Detective Houck had completed

specific training or education that was required for her employment as a detective with the Prosecutor's Office. As the statutory language makes plain, if the detective voluntarily attended courses other than those that were required of her, the documents revealing that information remain within the broadly-worded exemption and not subject to disclosure.

Although the language of the statute relating to the personnel records exemption and its exceptions is therefore clear, the outcome in this matter is not. The record demonstrates that the parties and the court that addressed the complaint that sought to compel disclosure pursuant to OPRA did not focus on the interpretation of the exemption and the exception that we have found to be so plain. Proof of that is found both in the broad brush nature of the demand made by Kovalcik and in the rather sparse certifications offered in opposition by the Prosecutor's Office. Neither party apparently considered the fact that OPRA, as it relates to personnel records, begins with a presumption of non-disclosure and proceeds with a few narrow exceptions that would need to be considered.

Complicating the record is the court's well-intentioned but technically flawed effort to apply the statute by gathering unsworn input about what specific educational or training requirements are imposed upon those seeking to become detectives from the individual who had filed the certification. The resulting record leaves this Court without any certainty about whether the document falls within the exemption, meaning that it is not to be disclosed, or within the exception, meaning that Kovalcik is in fact entitled to have it.

In light of the state of the record, Kovalcik urges us to direct disclosure, arguing that the creation of an insufficient record by the Prosecutor's Office about the reasons for its refusal to disclose the demanded document amounts to a failure to meet its burden of proof. Although we do not suggest that the Prosecutor's Office should be relieved of the obligation to fully support its reasoning as to how the nature of any requested document exempts it from

disclosure pursuant to OPRA, because Kovalcik's demand relates to personnel records, it implicates interests beyond those of the parties themselves.

The Legislature, in making OPRA a vehicle for broad disclosure of government records, and this Court, in interpreting OPRA in favor of requiring disclosure generally, have nonetheless recognized that there are limits, one of which relates to personnel records that are often sensitive, and understandably personal, in nature. *See N.J.S.A.* 47:1A–1 (charging public agencies "to safeguard from public access a citizen's personal information ... when disclosure thereof would violate the citizen's reasonable expectation of privacy"). That being so, this particular dispute is not one in which we can or should proceed on a record that is less than adequate. We therefore are constrained to remand this matter to the trial court for a further proceeding during which the parties shall be given an adequate opportunity to marshal sufficient proofs as to the nature of the contents of the particular documents and the specific educational requirements for employment as a detective in the Prosecutor's Office to enable the court to apply the statute in accordance with the analysis we have set forth.

## III.

The judgment of the Appellate Division is affirmed in part and reversed in part. We affirm the judgment to the extent that it concluded that the documents are not exempt as protected by an order of confidentiality. We reverse the judgment to the extent that it held that the documents are also not exempted personnel records, and we remand that aspect of the matter to the trial court for further proceedings in accordance with the principles to which we have adverted.

*For affirmance in part/reversal in part/remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, RIVERA–SOTO and HOENS—6.

*Opposed*—None.