22 A.3d 140 (2011)
421 N.J. Super. 24
Gayle Ann LIVECCHIA, Complainant-Respondent,
v.
BOROUGH OF MOUNT ARLINGTON, Custodian of Record-Appellant.
Docket No. A-4501-09T2.
Superior Court of New Jersey, Appellate Division.
Argued March 16, 2011.
Decided July 13, 2011.
*142 Levi J. Kool argued the cause for appellant (O'Donnell McCord, P.C., attorneys; Thomas A. Segreto, Lyndhurst, on the brief).
Walter M. Luers argued the cause for respondent, Gayle Ann Livecchia.
Paula T. Dow, Attorney General, attorney for respondent, Government Records Council (Debra A. Allen, Deputy Attorney General, on the statement in lieu of brief).
Before Judges AXELRAD,[1] R.B. COLEMAN and LIHOTZ.
The opinion of the court was delivered by
LIHOTZ, J.A.D.
In this matter arising under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, we examine whether a reasonable right to privacy precludes release of the destination location of cellular calls made by municipal employees using government-issued cellular phones. The Borough of Mount Arlington (the Borough) appeals from a Government Records Council (GRC) order directing it to release the cell phone records, redacting only the telephone numbers called, and to refund overcharges for duplicating audiotapes of a borough council meeting.[2] The Borough challenges the propriety of the GRC order, urging additional redaction is warranted because the Supreme Court has established a privacy interest exists in the people and places one calls. The Borough also argues the GRC erred in ordering a refund of the charges for audiotape replication, which properly included a charge for the cost of the equipment to create the copied audiotape.
Telephone records of a public entity, which are government records as defined under OPRA, may contain some information subject to an individual's privacy interests, such as the telephone number called. However, we reject the Borough's argument suggesting the opinions establishing a right to privacy in telephone records shields the destination location of the calls from public scrutiny. See North Jersey Newspapers Co. v. Passaic Cnty. Bd. of Chosen Freeholders, 127 N.J. 9, 18, 601 A.2d 693 (1992); Gannett N.J. Partners, LP v. Cnty. of Middlesex, 379 N.J.Super. 205, 215, 877 A.2d 330 (App.Div.2005). We hold that when limiting a public record request, OPRA's emphasis on access mandates the public entity clearly demonstrate a claim of privacy in all redacted information.
Here, in balancing these countervailing interests, the Borough has failed to show that the destination location of the calls made by municipal employees triggers a protected privacy right, similar to that sheltering the release of telephone numbers or names of persons called. Accordingly, OPRA's presumption favoring public access to the call location information prevails, and we affirm the order of the GRC.

*143 I.
Complainant Gayle Ann Livecchia submitted OPRA demands seeking copies of audiotapes recording the Borough's December 10, 2007 council meeting and cell phone records for all borough employees for September and October 2007.[3] Livecchia sought to verify whether the authorized limits of cell phone use were exceeded, including whether cell phones were being used for personal, rather than government, business without reimbursement and whether municipal employees made calls from home during working hours. To effectuate her requests, upon notice by the Borough, Livecchia paid $5.00 each for two audiotapes of the council meeting, a fee set by the Borough of Mount Arlington Code § 4-25(D), and $14.00 for twenty-six pages of cell phone records.
When releasing the records, the Borough informed Livecchia "some portions of the documents [we]re redacted as some of the information contained therein [wa]s not considered disclosable as a government record pursuant to OPRA." Both the numbers and destination of the itemized calls were removed. Livecchia asked for cell phone records without redaction and objected to the cost of replicating the audiotapes, suggesting it exceeded the actual cost. The Borough declined to alter its position, remaining steadfast to its initial explanation that redacting the information was permitted because of privacy interests and the audiotape charge was set by ordinance.
Livecchia filed a "Denial of Access Complaint" with the GRC. The GRC provides a forum to facilitate the mediated or adjudicated resolution of disputes regarding access to government records. N.J.S.A. 47:1A-7(b). Livecchia's complaint alleged the Borough violated OPRA by wrongly redacting the destination location included on the cell phone bills and imposing an unreasonable charge for producing audiotapes. After reviewing the parties' submissions, including supporting documentation, the GRC issued an interim order on November 19, 2009.
First, the agency concluded the redaction of the destination location of the cell phone calls was a violation of N.J.S.A. 47:1A-5(g) because no privacy issues were "implicated by the disclosure of a generic city and state without any personal identifiers such as a telephone number[.]" The Borough was ordered to release the cell phone records without removing "the city and state of the location of the cell phone calls" and to certify its compliance. Second, relying on Libertarian Party of Cent. N.J. v. Murphy, 384 N.J.Super. 136, 140-41, 894 A.2d 72 (App.Div.), remanded on other grounds by, 188 N.J. 487, 909 A.2d 723 (2006), the GRC required additional information to determine whether the audiotape charges exceeded the actual cost of providing the copy, as provided by N.J.S.A. 47:1A-5(b). The Borough was required to certify its costs, which could not include labor or other overhead expenses associated with making the copy, refund any excess charges and verify its compliance.
The Borough supplied additional documentation and sought reconsideration, N.J.A.C. 5:105-2.10, and a stay of the order, N.J.A.C. 5:105-2.12(f). At the GRC's request, the parties completed a Balancing Test Chart, detailing the alleged privacy interests implicated by disclosure of the information and the reasons Livecchia sought disclosure. The Borough supported *144 redacting the information because it fell within a person's expectation of privacy interests. See North Jersey Newspapers, supra, 127 N.J. at 18, 601 A.2d 693 (stating a person's expectation of privacy extends to telephone records). Livecchia expressed a need to obtain the call location information to determine whether borough employees were using municipal cell phones for personal use without reimbursement and to prove whether the Borough Administrator used the phone for personal calls from home, while absent from work.
The Executive Director considered the submissions and issued supplemental findings and recommendations. On April 8, 2010, the GRC unanimously adopted those findings and recommendations and entered its order. The order stated the Borough "failed to bear [the] burden of proof that the redactions made to the requested cell phone bills were authorized[,]" N.J.S.A. 47:1A-5(g), or necessary and did not sustain its burden to warrant reconsideration of the GRC's November 19, 2009 Order. The Borough was ordered to produce the records without redacting the call locations and to refund $8.42 of the charge collected for the audiotapes. This appeal ensued. N.J.S.A. 47:1A-7(e).

II.

A.
Our limited review is guided by well-settled principles. Univ. Cottage Club of Princeton N.J. Corp. v. N.J. Dep't. of Envtl. Prot., 191 N.J. 38, 48, 921 A.2d 1122 (2007). We are obliged to afford substantial deference to decisions of state administrative agencies. Cooper Univ. Hosp. v. Jacobs, 191 N.J. 125, 140, 922 A.2d 731 (2007); St. Peter's Univ. Hosp. v. Lacy, 185 N.J. 1, 13-15, 878 A.2d 829 (2005). Generally, actions of administrative agencies are entitled to a presumption of reasonableness. E. Orange Bd. of Educ. v. N.J. Sch. Constr. Corp., 405 N.J.Super. 132, 143, 963 A.2d 865 (App. Div.) (citing City of Newark v. Natural Res. Council, 82 N.J. 530, 539, 414 A.2d 1304, cert. denied, 449 U.S. 983, 101 S.Ct. 400, 66 L.Ed.2d 245 (1980)), certif. denied, 199 N.J. 540, 973 A.2d 944 (2009). We do not substitute our judgment for that of the agency, Div. of Alcoholic Beverage Control v. Maynards, Inc., 192 N.J. 158, 183, 927 A.2d 525 (2007), and afford substantial deference to an agency's interpretation of the statute it is charged with enforcing. R & R Mktg., L.L.C. v. Brown-Forman Corp., 158 N.J. 170, 175, 729 A.2d 1 (1999). We will not upset the ultimate determination of an agency unless it is shown to be arbitrary, capricious or unreasonable. Paff v. N.J. Dep't of Labor, 392 N.J.Super. 334, 340, 920 A.2d 731 (App.Div.2007). Consequently, our role is limited to four inquiries: (1) whether the agency's decision comports with federal and state constitutional requirements; (2) whether the agency's action is supported by express or implied legislative policies; (3) whether the factual findings that provide a foundation for the agency's decision are based on substantial evidence; and (4) whether the legislative policies, when applied to the facts, show that the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors. In re Taylor, 158 N.J. 644, 656, 731 A.2d 35 (1999).

B.
We also take cognizance of the provisions and policy considerations undergirding OPRA. The Legislature has declared that
government records shall be readily accessible for inspection, copying, or examination by the citizens of this State, with *145 certain exceptions, for the protection of the public interest, and any limitations on the right of access accorded by [OPRA] shall be construed in favor of the public's right of access[.]
[N.J.S.A. 47:1A-1.]
"[T]he purpose behind the Legislature's enactment of OPRA was to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process." Kovalcik v. Somerset Cnty. Prosecutor's Office, 206 N.J. 581, 588, 21 A.3d 1142, 2011 WL 2449185 (2011) (internal quotations and citations omitted). "With broad public access to information about how state and local governments operate, citizens and the media can play a watchful role in curbing wasteful government spending and guarding against corruption and misconduct." Burnett v. Cnty. of Bergen, 198 N.J. 408, 414, 968 A.2d 1151 (2009).
OPRA "generally places the burden upon the custodian of a public record to state the `specific basis' for the denial of access[.]" Gannett, supra, 379 N.J.Super. at 215, 877 A.2d 330. See also N.J.S.A. 47:1A-6 (stating "[t]he public agency shall have the burden of proving that the denial of access is authorized by law"). Nevertheless, the "sweeping declaration" that all government records shall be subject to public access unless exempt by provisions of the statute, "is not unlimited" and "`the public's right of access [is] not absolute.'" Kovalcik, supra, 206 N.J at 588, 21 A.3d 1142 (quoting Educ. Law Ctr. v. N.J. Dep't of Educ., 198 N.J. 274, 284, 966 A.2d 1054 (2009)). See also N.J.S.A. 47:1A-1.1 (exempting twenty-one categories of information from the definition of "government record").
The statute "simultaneously requires public agencies `to safeguard from public access a citizen's personal information' when disclosure would violate a person's `reasonable expectation of privacy.'" Burnett, supra, 198 N.J. at 414, 968 A.2d 1151 (quoting N.J.S.A. 47:1A-1). The government's need to weigh overriding concerns against allowing access permeates OPRA's provisions. Ibid. For example, the basis for allowing government records to be "inspected, examined and copied," stated in N.J.S.A. 47:1A-5(a), is tempered by the caveat that a request for access to a government document may be denied if it "would substantially disrupt agency operations," found in N.J.S.A. 47:1A-5(g). A public agency is guided by N.J.S.A. 47:1A-5(a), which directs that "[p]rior to allowing access to any government record, the custodian thereof shall redact from that record any information which discloses the social security number, credit card number, unlisted telephone number, or driver license number of any person[.]"[4] Further, N.J.S.A. 47:1A-9(b) states:
The provisions of [OPRA] shall not abrogate or erode any executive or legislative privilege or grant of confidentiality heretofore established or recognized by the Constitution of this State, statute, court rule or judicial case law, which privilege or grant of confidentiality may duly be claimed to restrict public access to a public record or government record.
In this matter, we again weigh whether an individual privacy interest overcomes OPRA's paramount principle of "ready access to government records[.]" Burnett, supra, 198 N.J. at 421, 968 A.2d 1151.

III.
Livecchia elected to file a challenge to the Borough's partial denial of her records *146 request before the GRC. See N.J.S.A. 47:1A-6 (stating that when a public agency denies access to public records, the requestor may file a complaint with the Superior Court or the GRC). The GRC is empowered to render decisions "as to whether the record which is the subject of the complaint is a government record which must be made available for public access. . . ." N.J.S.A. 47:1A-7(e).
On appeal, the Borough advances the arguments rejected by the GRC. These include: (1) the release of the cell phone records, unaltered as to destination location of the calls, violates the privacy interest of the parties to the call; and (2) the charge for reproducing audiotapes, which included a fee for the purchase of the requisite reproduction equipment in addition to the cost of an audiotape, was permissible. We examine each issue, keeping in mind the limits of our review and OPRA's statutory purpose.

A.
Principally relying on North Jersey Newspapers, supra, which entailed a review of an application under OPRA's predecessor, the Right to Know Law, N.J.S.A. 47:1A-2 to -4, the Borough echoes its position presented before the GRC: "a person's privacy interests include[ ] `the people and places one calls on a telephone, no less than the resulting conversations.'" 127 N.J. at 18, 601 A.2d 693 (quoting State v. Mollica, 114 N.J. 329, 344, 554 A.2d 1315 (1989)). Quoting our opinion in Gannett, supra, 379 N.J.Super. at 216-17, 877 A.2d 330, which applied North Jersey Newspapers to an OPRA request, the Borough maintains the privacy rights attached to telephone records are undisputable and absolute. The Borough contends the GRC's determination abrogated what "constitutes `judicial case law' that `established or recognized' the `confidentiality' of telephone billing records before enactment of OPRA within the intent of N.J.S.A. 47:1A-9(b)." Therefore, the Borough maintains the GRC exceeded its authority by "deviating from judicial precedents" and "revisited the law on redaction[ ] of cell phone records . . . and privacy rights" by balancing the request for disclosure against the established interests in maintaining privacy.
First, we note OPRA itself, although discussing exemption of telephone numbers in the interest of privacy, limits its restriction to unlisted numbers. See N.J.S.A. 47:1A-1.1 (excluding from the definition of "government record" a "portion of any document which discloses the. . . unlisted telephone number . . . of any person").
Second, although the Court in North Jersey Newspapers, supra, held there was no unqualified right of public access to telephone billing records because both the public official and the other person to the call have a expectation of privacy and a right to maintain the confidentiality of the communication, the overriding concern expressed by the Court's analysis was the disclosure of the identity of the caller. 127 N.J. at 16-18, 601 A.2d 693. Moreover, despite the more problematic concern of revealing with whom public officials communicate by telephone, the Court, in dicta, commented on possible circumstances permitting release:
If determining the identity of callers becomes necessary to prevent possible misuse of public funds (for example, if a public official is conducting a private business at public expense), a court may require preliminary disclosure to it of the identity of the persons called and the public nature of the calls.
[Id. at 17, 601 A.2d 693.]
Presaging the matter at hand, the Court's illustration exposes the flaw of the Borough's *147 assertion that privacy of telephone call records is unconditional.
In Gannett, supra, we examined the plaintiff newspaper's OPRA request for documents released in response to a federal grand jury subpoena issued to county offices. 379 N.J.Super. at 209, 877 A.2d 330. Among the documents sought was a blanket request for the telephone billing records of the County Administrator. Id. at 211, 877 A.2d 330. The telephone records were not released. Ibid. In upholding the defendant's claim of an OPRA exemption, we noted North Jersey Newspapers established a recognized confidentiality in telephone billing records, highlighting its passage that identified the problem with releasing "`telephone numbers called is the disclosure . . . inferentially, the identity of those called[.]'" Gannett, supra, 379 N.J.Super. at 216, 877 A.2d 330 (quoting North Jersey Newspapers, supra, 127 N.J. at 17, 601 A.2d 693).
We are not faced with a request to release telephone numbers or to identify the person called. Livecchia concedes as legitimate the redaction of telephone numbers; however, she maintains the destination location of the calls should be revealed based upon her need to check whether the cell phones are being used properly. As we have noted, the Borough's position advances a wholesale rejection of any need to balance the demand for access against an asserted privacy interest; it believes the privacy interest universally prevails.
Following our review, we reject the Borough's assertions and are convinced that neither North Jersey Newspapers nor Gannett allows complete exemption to all details of public entity telephone records. Further, we find persuasive Livecchia's argument that there is no absolute bar to the release of the destination location of telephone calls placed by public employees using publicly funded cell phones and the same would not impinge upon individual privacy interests.
We next review the most appropriate method to determine the propriety of the information's release. When reviewing an OPRA challenge, the Supreme Court has instructed we should weigh the interests to "harmonize the language in sections 1 and 5 and balance the interests each section advances: ready access to government documents while safeguarding the citizen's reasonable expectation of privacy." Burnett, supra, 198 N.J. at 425-26, 968 A.2d 1151. Burnett included a discussion of OPRA's legislative history, offering "direct support for a balancing test that weighs both the public's strong interest in disclosure with the need to safeguard from public access personal information that would violate a reasonable expectation of privacy." Id. at 427, 968 A.2d 1151.
To balance the countervailing interests of privacy and access, we look to Doe v. Poritz, 142 N.J. 1, 87-88, 662 A.2d 367 (1995), for guidance. Burnett, supra, 198 N.J. at 427, 968 A.2d 1151. "Although Doe considered constitutional privacy interests implicated by Megan's Law, it relied on case law concerning statutory privacy provisions under the Freedom of Information Act (FOIA)." Ibid. (citing Doe, supra, 142 N.J. at 82-86, 662 A.2d 367). The Court not only endorsed the GRC's prior application of Doe's factors when addressing statutory privacy claims under OPRA, it adopted the application of such a methodology because it "clearly identifies the key inquiries[.]" Ibid.
The test articulated in Doe, supra, delineated the following factors:
(1) the type of record requested; (2) the information it does or might contain; (3) the potential for harm in any subsequent nonconsensual disclosure; (4) the injury from disclosure to the relationship in *148 which the record was generated; (5) the adequacy of safeguards to prevent unauthorized disclosure; (6) the degree of need for access; and (7) whether there is an express statutory mandate, articulated public policy, or other recognized public interest militating toward access.
[142 N.J. at 87-88, 662 A.2d 367.]
This is exactly the reasoning followed by the GRC, belying the Borough's suggestion of a flawed procedural process. We conclude the GRC correctly applied the Doe balancing test when evaluating the competing interests at stake and we find no fault with its conclusion.
As we noted, Livecchia sought to assess her suspicions that borough employees were improperly using borough-supplied cell phones for personal calls without reimbursement and that the Borough Administrator used a borough-issued cell phone to make personal calls from her home during work hours. Livecchia advanced a need to analyze the borough employee cell phone records with the locationcity and stateof the calls when placed and the destination of the individual called. Simply stated, Livecchia needed the time of the call and the destination to determine whether government or personal business was being conducted at the taxpayer's expense. Livecchia acknowledged privacy concerns and did not press for the release of the phone number called.
On the other hand, the Borough has never explained, and we fail to understand, how revealing the city and state called by a municipal employee using a taxpayer-funded cell phone designated for work use could possibly impede the privacy rights of either the caller or the person called. None of the governmental privacy interests obviating disclosure identified in North Jersey Newspapers and reiterated in Gannett are present here.
Municipal employees are public servants. Rooting out the possible misuse of the public fisc and abuse of the taxpayer's trust is the bedrock upon which OPRA rests. We hold that the privacy interest attached to government telephone records, which protects the person called and his or her telephone number, does not similarly cloak the destination location of calls placed by government employees when necessary to advance the watchful eye of a vigilant public seeking accountability of its municipal representatives. OPRA does not permit redaction of such information. N.J.S.A. 47:1A-5(g). Accordingly, we conclude the GRC properly ordered the Borough to release the cell phone records, redacting only the numbers called.

B.
We also reject, as lacking merit, the Borough's procedural contention suggesting Livecchia failed to articulate the basis for her OPRA request and her post-complaint justification should be ignored. R. 2:11-3(e)(1)(E). "OPRA requires a party requesting access to a public record to specifically describe the document sought." Gannett, supra, 379 N.J.Super. at 212, 877 A.2d 330. See also N.J.S.A. 47:1A-5(f) (providing that "[t]he custodian of a public agency shall adopt a form for the use of any person who requests access to a government record held or controlled by the public agency"). The statute does not demand the requestor submit an approved justification for release of government records.

C.
The Borough also argues the GRC erred in ordering the difference between the actual cost of reproducing audiotapes and the $5.00 per audiotape charge imposed by ordinance be refunded. We disagree.
*149 OPRA's "guiding principle" states that "a fee [charged to a requestor] should reflect the actual cost of duplication." Murphy, supra, 384 N.J.Super. at 139, 894 A.2d 72. N.J.S.A. 47:1A-5(b) provides:
[T]he public agency shall be permitted to charge the actual cost of duplicating the record. The actual cost of duplicating the record, upon which all copy fees are based, shall be the cost of materials and supplies used to make a copy of the record, but shall not include the cost of labor or other overhead expenses associated with making the copy except as provided for in subsection c. of this section. Access to electronic records and non-printed materials shall be provided free of charge, but the public agency may charge for the actual costs of any needed supplies such as computer discs.
Additionally, special charges are authorized when the public entity cannot readily comply with the request because of its nature, volume or medium. N.J.S.A. 47:1A-5(c), (d).
[R]equestors may be assessed costs for preparation work involved in responding to a request. See N.J.S.A. 47:1A-5(c) (allowing reasonable special service charge when records cannot be reproduced using ordinary equipment or reproduction involves extraordinary expenditure of time and effort); N.J.S.A. 47:1A-5(d) (allowing reasonable special charge if "a substantial amount of manipulation" is required).
[Burnett, supra, 198 N.J. at 438, 968 A.2d 1151.]
All fees charged "must be reasonable, and cannot be used as a tool to discourage access." Higg-A-Rella, Inc. v. Cnty. of Essex, 141 N.J. 35, 53, 660 A.2d 1163 (1995). See also Goldsmith v. Camden Cnty. Surrogate's Office, 408 N.J.Super. 376, 383, 975 A.2d 459 (App.Div.), certif. denied, 200 N.J. 502, 983 A.2d 1110 (2009).
In a recent matter reviewing OPRA photocopying fees, we held "public entities could not lawfully charge a blanket fee of $0.25 per page to copy records if that rate exceeded the actual costs of such copying." Smith v. Hudson Cnty. Register, ___ N.J.Super. ___, ___, ___ A.3d ___, 2011 WL 1529730 (App.Div.2011) (slip op. at 2) (citing Smith v. Hudson Cnty. Register, 411 N.J.Super. 538, 562-70, 988 A.2d 114 (App.Div.2010)).[5] In reaffirming the need to adhere to the "actual cost" standard, we noted "actual per-page costs may be reasonably approximated. A margin of error of a penny or two in the per-page rate will be tolerable. The costs may be averaged for the copy equipment used in all county offices." Smith, supra, 411 N.J.Super. at 571, 988 A.2d 114. We did not review whether the hard cost of equipment purchased to perform audiotape replication tasks is an includable item when calculating actual cost under OPRA.
The Borough argues it should be entitled to include, as a special fee, a reasonable charge attributed to the cost of equipment purchased to make audiotapes. With this in mind, the Borough justifies the $5.00 per audiotape charge by considering the cost of each audiotape, $.79, and dividing the purchase price of the audiotape machine, $129.99, by the thirteen audiotape requests, computes an "actual cost" per audiotape of $10.78. Using this formula, the Borough reasons the $5.00 charge, set by ordinance on May 7, 2007, was imminently reasonable as it evinced *150 half of the actual cost incurred at the time Livecchia made her request.
Without deciding whether the equipment purchase made here was an extraordinary expense entitling a special fee pursuant to N.J.S.A. 47:1A-5(d), we reject the Borough's methodology as both unacceptable and arbitrary. We save for another day whether recouping the purchase price of equipment to assure OPRA compliance is permissible.
First, there is no relationship between recouping the costs of the audiotape duplicating machine and the charge of $5.00 per audiotape. Based on the Borough's disclosures, $4.21 of each $5.00 charge would be applied towards the machine's cost. Also, thirteen audiotapes were requested in seven months. If one annualizes these figures, the full price of the audiotape machine would be recovered in less than eighteen months. Therefore, those requesting audiotapes shortly following the machine's acquisition would be bearing the brunt of the expense and beginning in month sixteen, requestors would be paying for non-existent equipment costs, rendering a windfall to the municipality. The Borough's formula inequitably burdens requestors by continuing to charge for equipment years after the equipment cost was fully recouped.
Second, the assessment of a per audiotape cost without explanation as to why the fee was fixed at $5.00 is arbitrary and cannot be sustained. The burden of proving the actual costs rests on the Borough, which was unable to justify how its fee reflected the actual costs incurred. Smith, supra, 411 N.J.Super. at 572, 988 A.2d 114.
Here, the evidence in the record sustains the GRC's determination that the Borough failed to prove the fee charged reasonably reflected its actual cost. Accordingly, we will not disturb its order requiring reimbursement.

IV.
In summary, we conclude the privacy interest attached to telephone billing records permitting redaction of the telephone numbers may not preclude release of the destination locations called. Any claim of privacy may be overcome by a requestor's reasonable need for the information to challenge the misuse of public funds. In making a determination of whether redaction is warranted, the balancing test enunciated in Doe, supra, 142 N.J. at 87-88, 662 A.2d 367, should be applied.
Here, the Borough's assertions of privacy were unsupportable in light of Livecchia's claims of maintaining the integrity in the use of public equipment. Also, the Borough's attempt to recoup the cost of equipment to replicate audiotapes to be provided under OPRA was unsupportable as reflective of the actual cost of providing the public record and is therefore rejected.
Affirmed.
NOTES
[1] Judge Axelrad did not participate in oral argument. She joins the opinion with counsel's consent. R. 2:13-2(b).
[2] By our leave granted on July 28, 2010, we stated "[t]he order will be treated as final."
[3] Livecchia's initial OPRA submission sought numerous documents; however, we limit our discussion to the two items that are the focus of this appeal: the redaction of the cell phone records and the cost of the audiotapes.
[4] We note N.J.S.A. 47:1A-1.1 excludes from the definition of "government record" a "portion of any document which discloses the . . . unlisted telephone number . . . of any person[,]" an exception not applicable in this matter.
[5] On September 10, 2010, following our 2010 decision in Smith, the Legislature enacted A-559, amending OPRA to set copying costs for letter-size pages at $0.05 per page. See N.J.S.A. 47:1A-5(b) (as amended, eff. Nov. 9, 2010).