**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5675-16T2

LIBERTARIANS FOR
TRANSPARENT GOVERNMENT,
A NJ NONPROFIT CORPORATION,

    Plaintiff-Appellant,

v.

NEW JERSEY STATE POLICE
and DAVID ROBBINS, in his
official capacity as Records
Custodian for the New Jersey
State Police,

    Defendants-Respondents.

_____

Argued January 30, 2019 - Decided May 20, 2019

Before Judges Accurso and Vernoia.

On appeal from Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-0345-17.

Michael J. Zoller argued the cause for appellant (Pashman Stein, PC, attorneys; CJ Griffin, of counsel and on the brief; Michael J. Zoller, on the brief).

Suzanne M. Davies, Deputy Attorney General, argued the cause for respondents (Gurbir S. Grewal, Attorney General, attorney; Raymond R. Chance, III, Assistant Attorney General, of counsel; Suzanne M. Davies, on the brief).

PER CURIAM

Plaintiff Libertarians for Transparent Government appeals from a July 20, 2017 order dismissing its complaint under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, to compel the Division of State Police to release the name of a trooper listed in the Office of Professional Standard's 2015 annual report to the Legislature as having been terminated for misconduct. We affirm, essentially for the reasons expressed by Judge Jacobson in her cogent and comprehensive opinion from the bench.

The facts are easily summarized. Since 2000, the Office of Professional Standards within the Division of State Police has produced an annual report to the Legislature entitled "Internal Investigation and Disciplinary Process," providing the public with overviews of the discipline imposed on troopers as a result of substantiated allegations of misconduct over the course of a prior year. Included within the 2015 annual report synopsis of major discipline was this entry:

> Member pled guilty to acting in an unofficial capacity to the discredit of the Division while off-duty

by having questionable associations, engaging in racially offensive behavior and publicly discussing police patrol procedures. The member was required to forfeit all accrued time and separate from employment with the Division.

After reviewing the report, plaintiff filed an OPRA request seeking the "name, title, date of separation and reasons therefor," for the member. The Division denied the request on the basis it sought personnel records exempt from disclosure under N.J.S.A. 47:1A-10 (section 10). Specifically, the Division asserted its "internal affairs records are confidential from public disclosure both because they consist of long-recognized privileged information, and, to the extent they describe specific individual employees, are individualized personnel records."

Plaintiff filed a complaint and request for an order to show cause in the Law Division seeking to compel the State Police to reveal the identity of the trooper. Plaintiff noted OPRA's personnel records exemption in section 10 contains an exception for the employee's name, title, date of separation and the reason therefor. It argued the exception was drawn from Governor Byrne's 1974 Executive Order No. 11, which the Supreme Court interpreted as requiring a public agency to disclose "the results" of an investigation in providing "the reasons" for a separation. See S. Jersey Publ'g Co. v. N.J. Expressway Auth.,

124 N.J. 478, 496 (1991). Plaintiff noted it sought only the limited information explicitly made available by section 10 and nothing about the investigation or the specifics of the discipline.

The Division sought dismissal of the complaint, arguing section 10 did not mandate disclosure of the trooper's name. Instead, it simply declared an employee's name, title, date of separation and the reason therefor a government record, subject to disclosure only if not otherwise exempt under N.J.S.A. 47:1A-1[1] or N.J.S.A. 47:1A-9.[2] The Division argued plaintiff was not "only" seeking

[1] N.J.S.A. 47:1A-1 provides in pertinent part:

> [A]ll government records shall be subject to public access unless exempt from such access by: [OPRA] as amended and supplemented; any other statute; resolution of either or both houses of the Legislature; regulation promulgated under the authority of any statute or Executive Order of the Governor; Executive Order of the Governor; Rules of Court; any federal law, federal regulation, or federal order.

[2] N.J.S.A. 47:1A-9 provides:

> a. The provisions of [OPRA], shall not abrogate any exemption of a public record or government record from public access heretofore made pursuant to [the Right-to-Know Law, P.L.1963, c. 73 N.J.S.A. 47:1A-1 to -4]; any other statute; resolution of either or both Houses of the Legislature; regulation promulgated under the authority of any statute or Executive Order of

4

the limited information permitted in section 10's exception to the personnel exemption but, armed with the information in the 2015 annual report, was actually trying to pierce the exemption by linking the trooper to his disciplinary records, which it contended was not permitted under OPRA.

The Division presented a certification from the major in charge of the Division's Office of Professional Standards, explaining the purpose of the annual reports was to explain the disciplinary process in the Division of State Police, and provide statistical information about complaints and factual summaries of all completed investigations resulting in discipline to the Governor, the Legislature and all New Jersey citizens on an annual basis. The major also noted the Attorney General's Office of Law Enforcement Professional Standards, created pursuant to the Law Enforcement Professional Standards Act of 2009, N.J.S.A. 52:17B-222 to -236, and responsible for auditing and monitoring the

the Governor; Executive Order of the Governor; Rules of Court; any federal law; federal regulation; or federal order.

b. The provisions of [OPRA], shall not abrogate or erode any executive or legislative privilege or grant of confidentiality heretofore established or recognized by the Constitution of this State, statute, court rule or judicial case law, which privilege or grant of confidentiality may duly be claimed to restrict public access to a public record or government record.

Division's internal investigations to ensure compliance with all established performance standards, also issues periodic reports to the public about trooper misconduct and the Division's handling of complaints and internal investigations.

The major explained those reports are designed to further the public interest in maintaining a level of transparency into the disciplinary process in order to ensure the integrity of the process and the accountability of law enforcement while also safeguarding core confidentiality interests essential to the functioning of the disciplinary system. The major certified that consistent with the Attorney General's Internal Affairs Policies and Procedures, "[t]he nature and source of internal allegations, the progress of internal affairs investigations, and the resulting materials" — beyond that included in the public reports — is confidential information released only as permitted by the Attorney General's policies and procedures.

The major averred that "[b]esides being contrary to longstanding practice and policy, . . . releasing the contents of internal investigative files pursuant to record requests," could expose a witness, a complainant or member of State police to public identification. He contended

> [m]aintaining integrity and public trust in the [State
> Police] requires not only keeping its employees, as well

as private citizens, confident that they can cooperate and come forth with information without fear of public exposure (or worse consequences), but also keeping all [State Police] members on notice that instances of actual misconduct will not go unchecked due to such fears.

The major further expressed the belief that maintaining the integrity of the Division's internal affairs operations "includes protecting the identities of any members subject to internal investigations," providing an incentive to some troopers to cooperate and admit culpability and others to volunteer information about misconduct. The major expressed the view that public disclosure of "the limited information protected under longstanding State policy and law enforcement best practices" of the type sought would quickly erode "the integrity of the [Division's] internal investigations, and the trust of those who would volunteer information or who would be subject to investigations."

Plaintiff countered by arguing the threat of public exposure would likely deter more misconduct and that the public interest is not served by allowing a trooper to resign in secret following misconduct and go on to employment elsewhere with no disclosure of his or her misdeeds. Plaintiff also argued that no policy of the Attorney General prohibiting disclosure of the names of troopers involved in internal affairs investigations can exempt information that section 10 expressly requires to be disclosed.

7

Judge Jacobson rejected plaintiff's argument and dismissed its complaint. After laying out the facts and the parties' competing arguments, the judge turned to the statute. She began by noting that OPRA was adopted "to provide the public with insight into the operations of government"; that government records are to be readily accessible, with certain exceptions, and that the statute is to be construed in favor of the public's right of access. See N.J.S.A. 47:1A-1; Mason v. City of Hoboken, 196 N.J. 51, 64 (2008). The judge noted OPRA broadly defines "government records" but also excludes from that definition twenty-one different categories of information. N.J.S.A. 47:1A-1.1.

Judge Jacobson further noted the exemption for personnel records is not included with the list of the other twenty-one exemptions but is set forth in its own separate section of the statute, denoting the Legislature's significant concern in ensuring the protection of the personnel and pension records of public employees. See N.J.S.A. 47:1A-10; Kovalcik v. Somerset Cty. Prosecutor's Office, 206 N.J. 581, 592 (2011). The judge also noted the language of section 10 which states that "records relating to any grievance filed by or against an individual, shall not be considered a government record," N.J.S.A. 47:1A-10, and the Department of Law and Public Safety's subsequent adoption of N.J.A.C.

13:1E-3.2(a)(4), excluding from the definition of government records subject to access under OPRA,

> 4. Records, specific to an individual employee or employees — other than those records enumerated in N.J.S.A. 47:1A-10 as available for public access — and relating to or which form the basis of discipline, discharge, promotion, transfer, employee performance, employee evaluation, or other related activities, whether open, closed, or inactive, except for the final agency determination.

Acknowledging that section 10 provides an exception for an individual's name, Judge Jacobson noted providing the trooper's name here "would run right up against the real thrust of the personnel exemption to reveal misconduct and discipline" and that "to provide the name would provide the discipline." Observing that plaintiff's policy arguments were focused on the importance of holding law enforcement accountable, the judge noted the Legislature in drafting OPRA "did not make any . . . distinction" between law enforcement officials and other public employees.

The judge further noted the extent of the information provided regularly by the Office of Professional Standards and the Attorney General's Office of Law Enforcement Professional Standards of complaints and discipline against troopers, albeit without identifying them, consistent with the Attorney General's long-standing policy of the confidentiality of internal affairs records. The judge

rejected any argument that internal affairs records were not protected under section 10 because they were not contained in the personnel file of the trooper, noting the exemption had not been interpreted so narrowly. See McGee v. Twp. of E. Amwell, 416 N.J. Super. 602, 616 (App. Div. 2010).

The judge declined the State's invitation to apply a "law enforcement" or "official information" privilege, finding them not "clearly defined." She noted, however, that State Police and the Attorney General's Office had been providing reports to the Legislature detailing trooper discipline without identifying the troopers involved since 2000, "[a]nd there's been no call for trooper names, no amendment to OPRA, no distinction between troopers and other public employees."

Judge Jacobson noted our Supreme Court has observed "that the discipline of State Troopers involves the most profound and fundamental exercise of managerial prerogative and policy." See State v. State Troopers Fraternal Ass'n, 134 N.J. 393, 417 (1993). Recognizing the role of the Attorney General as "the State's chief law enforcement officer [with] the authority to adopt guidelines, directives, and policies that bind police departments throughout the State," N. Jersey Media Grp., Inc. v. Twp. of Lyndhurst, 229 N.J. 541, 565 (2017), the judge found the Attorney General's policy that internal affairs records remain

confidential has "been acknowledged and followed and not interfered with by the courts" of this State, "underscor[ing] . . . the appropriate interpretation of the personnel exemption in the context of this case." Given the primacy of that policy and section 10's exemption of personnel records "including but not limited to records relating to any grievance filed by or against an individual," N.J.S.A. 47:1A-10, the judge concluded revealing the trooper's name here, in light of the information State Police has already publicly disclosed about the substantiated allegations against the trooper and the discipline imposed, would reveal information expressly protected by section 10, and thus mandated the trooper's name not be disclosed.

Plaintiff appeals, reprising the arguments it made to the trial court. We reject those arguments and affirm substantially for the reasons expressed by Judge Jacobson in her opinion from the bench on July 20, 2017. We agree with her analysis that, under the unusual circumstances of this case, disclosure of the trooper's name pursuant to the narrow exception to the personnel records exemption in section 10, would violate both the letter and the spirit of the exemption itself, and was thus properly denied.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

11                                                          A-5675-16T2