947 A.2d 681 (2008)
400 N.J. Super. 388
John G. McELWEE, Plaintiff-Appellant,
v.
BOROUGH OF FIELDSBORO, Defendant-Respondent.
Docket No. A-1230-06T3
Superior Court of New Jersey, Appellate Division.
Submitted April 15, 2008.
Decided May 29, 2008.
John G. McElwee, appellant pro se.
Hulse & Germano, Burlington, for respondent (Denis C. Germano, on the brief).
Before Judges WINKELSTEIN, YANNOTTI and LeWINN.
The opinion of the court was delivered by
*682 YANNOTTI, J.A.D.
Plaintiff John G. McElwee appeals from an order entered by the Law Division on September 25, 2006, which upheld a determination by defendant Borough of Fieldsboro to remove him from his position as a police officer. We affirm.
In 2000, plaintiff began working for the Borough as a police lieutenant. Initially, plaintiff was the Borough's only police officer and he remained so until April 2003, when the Borough hired another officer. On February 12, 2002, the Borough adopted an ordinance that designated the police lieutenant as the senior operational officer in the department, subject to the administrative direction of the Borough's director of public safety.
The ordinance allowed the mayor to serve as director for up to six months in the event of an absence, disqualification or vacancy in that the position. Sometime before the ordinance was passed, Mayor Edward Tyler appointed himself as director of public safety. Thereafter, Tyler did not appoint another public safety director and he continued to serve in that position beyond the six months permitted by the ordinance.
In 2003, the Borough issued a complaint charging plaintiff with ten counts of misconduct. A hearing officer conducted a hearing on the charges on various dates from December 23, 2003, to April 20, 2004. During the hearing, the Borough dismissed five of the counts.
The remaining counts charged plaintiff with: failing to have the Borough's police vehicle repaired at Glenk's Auto Repair, as required by the Borough's policy (count one); failing to report his absences to the Borough Clerk or his supervisor (count two); refusing to comply with the Borough's directive that he work the 3:00 p.m. to 11:00 p.m. shift on Thursdays, Fridays and Saturdays (count five); failing to comply with directives from the Council and Tyler that he devote "the bulk of his time" to patrol (count eight); and failing to comply with a directive requiring that he prepare and submit patrol logs to document "the nature of his daily activities and the amount of time" that he devoted to patrol duties (count nine).
The hearing officer issued a report dated June 14, 2004, in which he found plaintiff guilty on the five remaining charges. As a penalty, the hearing officer recommended plaintiff's removal. The Mayor and Council accepted the hearing officer's findings and recommendation and, on July 14, 2004, terminated plaintiff.
On July 15, 2004, plaintiff commenced an action in the Law Division in which he sought review of the Borough's action. The judge heard oral argument on September 14, 2006 and, on that date, rendered a decision from the bench.
The judge first addressed the charge in count one. The judge found that the Borough had an unwritten policy to have its police vehicles serviced at Glenk's Auto Repair. The judge also found that plaintiff was aware of the policy and knowingly failed to follow it. The judge concluded, however, that plaintiff's failure to follow this policy did not rise to the level of misconduct and did not warrant the imposition of any sanction. The judge stated that the charge had "nothing to do . . . with the safety or welfare of the people."
The judge found that plaintiff failed to report his sick and vacation days, as charged in count two. The judge accepted Tyler's assertion that he had asked plaintiff to report his sick and vacation days. The judge observed that this was "not an onerous request." The judge found that plaintiff's failure to report his absences also had little, if anything, to do with the *683 safety, health or welfare of the Borough's residents.
The judge additionally found that plaintiff had refused to work the 3:00 p.m. to 11:00 p.m. shift on Thursdays, Fridays, and Saturdays, as charged in count five. The judge found that Tyler and the Council had specifically requested that plaintiff work those hours, and plaintiff had informed Tyler that he could not work the late shift because he had another job. The judge noted that Tyler had endeavored to accommodate plaintiff by offering to give plaintiff Fridays and Saturdays off, but plaintiff had responded by asserting that the Council did not have any right to order a change in patrol.
The judge stated that plaintiff's refusal to work the late shift as directed by the Council "directly implicate[d] the safety and welfare of the" Borough's residents. The judge found that the Council had the power to request the shift change and it was a legitimate request. The judge concluded that plaintiff's refusal to work the shift was insubordination that required a sanction.
The judge also determined that the evidence established that plaintiff failed to devote a substantial amount of his time to patrol, as charged in count eight. The judge noted that the Borough presented testimony from Donna Hornyak, a dispatcher for Burlington County, who had reviewed certain records that documented plaintiff's contacts with "Central Communication" in the period from January 2003 through September 2003. Based on her review of the records, Hornyak concluded that plaintiff worked 129 days during that period and was on "active patrol" only 29 of those days.
The judge found that Hornyak was "an objective historian" and her testimony was credible. The judge concluded that plaintiff had received a written memorandum directing him to patrol six hours a day and plaintiff violated the Borough's directive. The judge stated that, because police presence reduces crime, plaintiff's failure to follow the directive affected the safety and welfare of the Borough's residents.
In addition, the judge found that the evidence supported the charge in count nine that plaintiff had not submitted logs of his patrols as required by Tyler. The judge rejected plaintiff's assertion that he had prepared the patrol logs because plaintiff never produced copies of the logs. The judge stated that, if plaintiff had the patrol logs as he claimed, it would have been "a very simple" task to produce or copy the logs to rebut the charge. Nevertheless, the judge found that the violation did not warrant "any real sanction."
The judge concluded that plaintiff's refusal to work the 3:00 p.m. to 11:00 p.m. shift on Thursdays, Fridays and Saturdays, and his failure to devote a substantial amount of time to patrol, constituted serious misconduct that affected the public safety and warranted "severe sanctions." The judge stated that plaintiff had an attitude that "he was a law unto himself" and that no one was "going to tell him how to" do his job.
The judge observed that plaintiff's "failure to patrol in the face of unequivocally being told to patrol, . . . and [his] refus[al] to work 3:00 [p.m.] to 11:00 [p.m.]" were "individually enough to warrant dismissal[.]" The judge commented that those two violations "were so pervasively unbecoming the duties of the only police officer of the town, as to merit [plaintiff's] discharge, even in the absence of prior discipline." The judge entered an order dated September 25, 2006, which memorialized his findings. This appeal followed.
Plaintiff argues that the charges should have been dismissed because they were *684 not brought within forty-five days of the date when the Borough had sufficient information to file the charges. In support of this contention, plaintiff relies upon N.J.S.A. 40A:14-147, which states in pertinent part:
Except as otherwise provided by law, no permanent member or officer of the police department or force shall be removed from his office, employment or position for political reasons or for any cause other than incapacity, misconduct, or disobedience of rules and regulations established for the government of the police department and force, nor shall such member or officer be suspended, removed, fined or reduced in rank from or in office, employment, or position therein, except for just cause as herein before provided and then only upon a written complaint setting forth the charge or charges against such member or officer. The complaint shall be filed in the office of the body, officer or officers having charge of the department or force wherein the complaint is made and a copy shall be served upon the member or officer so charged, with notice of a designated hearing thereon by the proper authorities, which shall be not less than 10 nor more than 30 days from date of service of the complaint.
A complaint charging a violation of the internal rules and regulations established for the conduct of a law enforcement unit shall be filed no later than the 45th day after the date on which the person filing the complaint obtained sufficient information to file the matter upon which the complaint is based. . . . 
A failure to comply with said provisions as to the service of the complaint and the time within which a complaint is to be filed shall require a dismissal of the complaint.
[Emphasis added.]
As the statute provides, the requirement that a complaint be filed within forty-five days of the date when the complainant has sufficient information to make the complaint pertains to alleged violations of "internal rules and regulations established for the conduct of [the] law enforcement unit[.]" However, a violation of "internal rules and regulations" is only one of the grounds upon which a police officer may be disciplined. The statute also allows a police officer to be removed for incapacity or misconduct but imposes no time constraints on asserting a complaint seeking removal on those grounds.
Here, the Borough sought plaintiff's removal for misconduct, not for the violation of a specific internal rule or regulation governing the operations of the Borough's police department. Therefore, the forty-five day requirement in N.J.S.A. 40A:14-147 did not apply and the statute did not require the dismissal of the charges. We accordingly reject plaintiff's contention that the charges at issue were time-barred.
Plaintiff next argues that the charges should have been dismissed because the Borough failed to adopt and implement guidelines consistent with those promulgated by the Attorney General. In support of this contention, plaintiff cites N.J.S.A. 40A:14-181, which states that:
[e]very law enforcement agency shall adopt and implement guidelines which shall be consistent with the guidelines governing the "Internal Affairs Policy and Procedures" of the Police Management Manual promulgated by the Police Bureau of the Division of Criminal Justice in the Department of Law and Public Safety, and shall be consistent with any tenure or civil service laws, and shall not supersede any existing contractual agreements.
*685 We reject defendant's contention that he may not be subject to removal for misconduct merely because the Borough has not adopted internal affairs guidelines in accordance with the Attorney General's "Internal Affairs Policy and Procedures," as required by N.J.S.A. 40A:14-181. Plaintiff correctly points out that the statute requires every law enforcement agency to adopt and implement guidelines consistent with the Attorney General's internal affairs policies and procedures. However, the statute does not provide that, in the absence of such guidelines, a law enforcement agency may not discipline or remove an officer for misconduct.
Moreover, the Attorney General's guidelines state that they are intended to "assist the State's law enforcement agencies with the receipt, investigation and resolution of citizen complaints or police misconduct," and that the goal of the Attorney General's guidelines "is to improve the delivery of police services to the citizens of New Jersey." See In re Carroll, 339 N.J.Super. 429, 443, 772 A.2d 45 (App.Div.) (noting that the purpose of the Attorney General's Guidelines is to establish procedures for investigating employee misconduct and determining whether criminal or disciplinary action is warranted), certif. denied, 170 N.J. 85, 784 A.2d 718 (2001).
By requiring law enforcement agencies to adopt guidelines consistent with those promulgated by the Attorney General, the Legislature obviously intended to protect the public from police misconduct. It would be inconsistent with the Legislature's intention to read N.J.S.A. 40A:14-181 as barring a law enforcement agency from removing an officer for misconduct simply because the agency has not adopted internal affairs guidelines.
Plaintiff additionally argues that his removal was not brought about in accordance with the Borough's municipal code, which states in part that a member of the police force may not be "suspended, removed, fined, or reduced in rank for any cause except as provided for in the New Jersey statutes and the rules and regulations of the police force." Plaintiff contends that his removal is unlawful because the Borough failed to adhere to the policy of progressive discipline, which plaintiff says is required by the Attorney General's guidelines.
The Attorney General's guidelines provide that a law enforcement agency's rules and regulations "should set forth a schedule of possible penalties [a police] officer might receive when discipline is imposed" and that "[a] system of progressive discipline should be instituted within the agency's rules." Although the Attorney General's guidelines contemplate the establishment of a "system of progressive discipline," this does not mean that progressive discipline must be imposed in every case regardless of the circumstances.
Our Supreme Court discussed the concept of progressive discipline in In re Carter, 191 N.J. 474, 483, 924 A.2d 525 (2007). In that case, a police officer was charged with various offenses, including sleeping on duty. Id. at 476, 924 A.2d 525. The officer was discharged and the Merit System Board upheld the officer's termination but we reversed that decision, finding that the penalty was too severe and inconsistent with the concept of progressive discipline. Id. at 482, 924 A.2d 525.
The Supreme Court reversed our judgment and reinstated the officer's termination, noting that "some disciplinary infractions are so serious that removal is appropriate notwithstanding a largely unblemished prior record." Id. at 484, 924 A.2d 525. The Court added that this was especially so in matters involving the discipline of police officers where "public safety concerns may also bear upon the propriety of the dismissal sanction." Id. at 485, 924 A.2d 525.
*686 There is no indication that the Attorney General intended to depart from these general principles when promulgating the guidelines for law enforcement disciplinary matters. The Attorney General's guidelines merely require that a law enforcement agency establish by rule a "system of progressive discipline." We are convinced that any such "system" must recognize that there are circumstances when a police officer's misconduct is so serious that progressive discipline need not be imposed.
Plaintiff additionally argues that the record does not support the judge's factual findings regarding the disciplinary charges. However, the scope of our review of the judge's findings of fact is strictly limited. We will not disturb a trial judge's factual findings "`unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]'" Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484, 323 A.2d 495 (1974) (quoting Fagliarone v. Twp. of No. Bergen, 78 N.J.Super. 154, 155, 188 A.2d 43 (App.Div.1963)).
Furthermore, deference to the findings of the trial judge is particularly appropriate where, as in this case, the findings are "substantially influenced by [the judge's] opportunity to hear and see the witnesses and to have the `feel' of the case, which a reviewing court cannot enjoy." State v. Johnson, 42 N.J. 146, 161, 199 A.2d 809 (1964). We are satisfied from our review of the record that the judge's findings of fact are supported by substantial credible evidence.
Affirmed.