**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2573-19T3

RICHARD RIVERA,

    Plaintiff-Respondent,

v.

UNION COUNTY
PROSECUTOR'S OFFICE,
and JOHN ESMERADO in his
official capacity as Records
Custodian for the Union County
Prosecutor's Office,

    Defendants-Appellants,

and

CITY OF ELIZABETH,

    Intervenor-Appellant.

_____

Argued telephonically May 18, 2020 –
Decided June 19, 2020

Before Judges Geiger and Natali.

On appeal from the Superior Court of New Jersey, Law
Division, Union County, Docket No. L-2954-19.

April C. Bauknight, Assistant County Counsel, argued the cause for appellants Union County Prosecutor's Office and John Esmerado (Robert E. Barry, Union County Counsel, attorney; April C. Bauknight, on the briefs).

CJ Griffin argued the cause for respondent (Pashman, Stein, Walder & Hayden, PC, attorneys; CJ Griffin, on the brief).

Robert F. Varady argued the cause for intervenor-appellant City of Elizabeth (LaCorte, Bundy, Varady & Kinsella, attorneys; Robert F. Varady, of counsel; Christina M. DiPalo, on the brief).

PER CURIAM

The Union County Prosecutor's Office (UCPO) conducted an internal affairs (IA) investigation of former Elizabeth Police Department (EPD) Director James Cosgrove's alleged workplace misconduct directed at members of the EPD. Plaintiff Richard Rivera[1] requested access to the IA investigation report pursuant to the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, and the common law right of access. The UCPO denied his request.

---

[1] Plaintiff "is a retired New Jersey municipal police officer, private consultant, civil rights advocate, and expert witness in police practices and policies." Since 2008, he has "volunteer[ed] his time and resources to the Latino Leadership Alliance of New Jersey" and co-chairs its Civil Rights Protection Project.

Plaintiff filed this action against defendants UCPO and John Esmerado, in his official capacity as Records Custodian for the UCPO, demanding access to the IA investigation report. By leave granted, defendants and intervenor City of Elizabeth (Elizabeth) (collectively appellants), appeal from a February 6, 2020 Law Division order requiring the UCPO and Esmerado to produce "the complete set of investigation materials that was conducted into the conduct of former Elizabeth Police Director James Cosgrove" for in camera review.

## I.

We summarize the pertinent facts. In February 2019, EPD employees filed an internal complaint alleging Cosgrove used racist and sexist epithets when referring to his staff. After conducting a two-month IA investigation of Cosgrove's conduct, the UCPO sustained the allegations against Cosgrove, finding he violated Elizabeth's anti-discrimination and anti-harassment policies.

In April 2019, the UCPO wrote to the complainants' attorney notifying him that "a thorough investigation" revealed that "Cosgrove used derogatory terms in the workplace when speaking about city employees." The attorney turned the letter over to the media. On April 26, 2019, Attorney General Gurbir S. Grewal issued a press release calling for Cosgrove's immediate resignation. Attorney General Grewal noted that the IA investigation "concluded that, over

the course of many years, Director Cosgrove described his staff using derogatory terms, including racist and misogynistic slurs." The media gave substantial coverage to the story. Cosgrove resigned shortly thereafter.

In July 2019, plaintiff submitted an OPRA and common law right of access request to the UCPO, seeking the following material with appropriate redactions: (1) "the report regarding [the EPD's IA] issues and claims of racism and misogyny"; and (2) "all [IA] reports regarding" Cosgrove.

The UCPO issued a July 10, 2019 letter denying plaintiff's request for the documents. As to the requested EPD report, the UCPO advised that "in general, . . . no such report exists." As to Cosgrove-related IA reports, the UCPO explained that such material is a "personnel and/or internal affairs record[]," which is "exempt from disclosure under OPRA" and remains confidential pursuant to the Internal Affairs Policy & Procedures (IAPP) promulgated by the Attorney General,[2] absent "a court order or consent of the Prosecutor or Law Enforcement Executive."

---

[2] The IAPP is issued by the Attorney General through the Division of Criminal Justice and has been periodically updated, most recently in December 2019. While the 2017 version was in effect when plaintiff filed this action, we cite to the December 2019 version because the revisions do not affect our analysis.

The UCPO also denied plaintiff's common law request, asserting that its "interest[s] in maintaining confidentiality significantly outweigh [plaintiff's] interests in disclosure." The UCPO explained that releasing the IA reports would have a chilling effect on individuals reporting wrongdoing. It noted that "remedial measures" had been taken, which included Cosgrove's resignation and requiring the EPD "to be retrained on issues of implicit bias and workplace harassment."

On August 21, 2019, plaintiff filed this action against the UCPO and Esmerado alleging violations of OPRA (count one) and the common law right of access (count two). The court issued an order to show cause (OTSC) directing defendants to explain why judgment should not be entered granting plaintiff access to the records and awarding attorney's fees. Elizabeth moved to intervene, which was granted.

During oral argument before the trial court, plaintiff's counsel acknowledged the need to redact information identifying the complainants. Counsel stated that plaintiff "doesn't care about who the complainants are. He doesn't want identifying information. This is just about the facts as it relates to former director Cosgrove, not the people who made the allegations."

5

The court issued an oral decision and February 6, 2020 order partially granting plaintiff's OPRA application, requiring defendants to produce "the complete set of investigation materials for the investigation that was conducted into the conduct of . . . Cosgrove to be reviewed in camera and under seal."

The court acknowledged the competing interests of confidentiality and transparency. It noted that "[t]here is certainly a justification for a level of secrecy to protect people who . . . would be putting themselves in jeopardy depending on how they . . . were to testify. So, that's a justification for normally keeping these things private." The court recognized that "[IA] investigations of this type are normally not made public under the theory that investigations should be free to explore complaints and issues and witnesses" without the possibility of public disclosure that "could subject them to harm." But the court also expressed "fear that serious matters are covered up by the secrecy with which [IA] investigations have been cloaked."

During oral argument before the trial court, a colloquy ensued regarding whether any public announcements about the IA investigation were "akin" to a waiver of the right to confidentiality. The trial court did not find appellants had waived the right to confidentiality but noted the UCPO and Elizabeth had "publicly affirmed that [the] allegations were based in fact and one of the

particular individuals involved in the inappropriate tendencies is no longer with the [EPD] as a result." The court concluded that the acting prosecutor's report about the investigation and findings and Elizabeth's "publicly announced corrective action" rendered "the normal reasons for keeping the [IA] reports secret . . . not as valid as they would otherwise be in a routine case."

The court stated it was unaware of any binding precedent prohibiting release of IA materials and noted the IAPP expressly permits the release of such material by court order.

In rejecting appellants' argument that OPRA's personnel record exemption applies, the court reasoned the matter at issue "is not about someone's pension, abuse of sick-leave, vacation accumulation and the like" but rather one of "extraordinary public interest."

The court recognized the risk that complainants and witnesses could face retribution or intimidation if their identities were detected. The Court acknowledged its "obligation to attempt to protect those individuals who could unnecessarily be at risk by public disclosure."

Ultimately, the court required that "all aspects" of the UCPO's investigation be provided for in camera review under seal. To protect confidentiality, the court stated it would redact "not just the names, but the

circumstances by which" the complainants and witnesses "could well be identified."

The court did not reach plaintiff's common law right of access claim and reserved judgment on plaintiff's application for an award of counsel fees. The court subsequently denied defendant's motion to stay the order and plaintiff's motion for reconsideration as to its common law right of access claim.

We granted the UCPO leave to appeal, stayed the trial court's order, and permitted Elizabeth to intervene in the appeal.

On appeal, the UCPO raises the following points:

I. THE TRIAL COURT ERRED IN CONCLUDING THAT [IA] MATERIAL ARE NOT PERSONNEL RECORDS, AND THEREFORE NOT WITHIN AN EXEMPTION WITHIN N.J.S.A. 47:1A-10.

II. THE ATTORNEY GENERAL'S [IAPP] REINFORCE THE LONG-RECOGNIZED CONFIDENTIALITY OF [IA] RECORDS.

III. THE TRIAL COURT MISCHARACTERIZED THE HOLDING OF O'SHEA[3] BY INFERRING THAT A USE OF FORCE REPORT IS SIMILAR TO AN [IA] REPORT.

IV. THE TRIAL COURT PREMATURELY DISCUSSED ATTORNEY'S FEES THEREBY SIGNALING A DECISION WAS ALREADY MADE.

---

[3] O'Shea v. Twp. of W. Milford, 410 N.J. Super. 371 (App. Div. 2009).

V.  THE DISCLOSURE OF [IA] MATERIAL WILL
ERADICATE THE STATE'S PUBLIC POLICY TO
MAINTAIN THE CONFIDENTIALITY OF [IA] AND
SET PRECEDENT WHICH WILL STRONGLY
DEVIATE FROM LEGISLATIVE INTENT.

In turn, Elizabeth raises the following additional points:

I.  THE TRIAL COURT ERRONEOUSLY GRANTED
THE PLAINTIFF'S [OTSC] AS THE UNION
COUNTY PROSECUTOR'S [IA] REPORT
RELATING TO THE INVESTIGATION OF JAMES
COSGROVE IS CONFIDENTIAL AND CANNOT BE
RELEASED UNDER OPRA.

II. THE TRIAL COURT ERRONEOUSLY GRANTED
THE PLAINTIFF'S [OTSC] AS THE UNION
COUNTY PROSECUTOR'S [IA] REPORT
RELATING TO THE INVESTIGATION OF JAMES
COSGROVE IS EXEMPT FROM OPRA AS IT
CONSTITUTES A PERSONNEL RECORD.

III.  THE TRIAL COURT'S DECISION IS NOT
SUPPORTED BY THE RECORD IN THIS CASE.

II.

We begin our analysis by briefly reviewing OPRA's purpose, requirements, and application.  The Legislature enacted OPRA "to promote transparency in the operation of government."  Sussex Commons Assocs., LLC v. Rutgers, 210 N.J. 531, 541 (2012) (citing Burnett v. Cty. of Bergen, 198 N.J. 408, 414 (2009)).  "[T]o ensure an informed citizenry and to minimize the evils inherent in a secluded process," OPRA provides the public with broad access to

9

"government records . . . unless an exemption applies." In re N.J. Firemen's Ass'n Obligation, 230 N.J. 258, 276 (2017) (citations omitted).  To fulfill that purpose, N.J.S.A. 47:1A-1 provides that "government records shall be readily accessible . . . by the citizens of this State, with certain exceptions, for the protection of the public interest, and any limitations on the right of access . . . shall be construed in favor of the public's right of access."  See also N. Jersey Media Grp., Inc. v. Twp. of Lyndhurst, 229 N.J. 541, 555 (2017) (acknowledging this statutory mandate).

"Government record" is broadly defined under OPRA to include any document "made, maintained or kept on file in the course of . . . official business by any officer, commission, agency or authority of the State or of any political subdivision [or] subordinate boards thereof."  N.J.S.A. 47:1A-1.1. Notwithstanding OPRA's expansive reach, "the right to disclosure is not unlimited."  Kovalcik v. Somerset Cty. Prosecutor's Office, 206 N.J. 581, 588 (2011).  N.J.S.A. 47:1A-1.1 expressly excludes twenty-one categories of documents and information from its definition of a government record.

Relevant here, OPRA's broad right to access is limited by "established public-policy exceptions," which declare that "government record[s] shall not include . . . information which is deemed to be confidential."  Gilleran v. Twp.

of Bloomfield, 227 N.J. 159, 170 (2016) (second alteration in original) (quoting N.J.S.A. 47:1A-1.1). Such confidential information includes personnel records and grievances. N.J.S.A. 47:1A-1.1, -10.

"OPRA also contains a privacy clause requiring public agencies 'to safeguard from public access a citizen's personal information with which it has been entrusted when disclosure thereof would violate the citizen's reasonable expectation of privacy[.]'" L.R. v. Camden City Pub. Sch. Dist., 452 N.J. Super. 56, 80 (App. Div. 2017) (alteration in original) (quoting N.J.S.A. 47:1A-1), aff'd by an equally divided Court, 238 N.J. 547 (2019). Courts consider the following factors when determining whether a government record must be withheld or redacted prior to disclosure under OPRA:

> (1) the type of record requested; (2) the information it does or might contain; (3) the potential for harm in any subsequent nonconsensual disclosure; (4) the injury from disclosure to the relationship in which the record was generated; (5) the adequacy of safeguards to prevent unauthorized disclosure; (6) the degree of need for access; and (7) whether there is an express statutory mandate, articulated public policy, or other recognized public interest militating toward access.
>
> [Burnett, 198 N.J. at 427 (quoting Doe v. Poritz, 142 N.J. 1, 88 (1995)).]

Additional provisions exempt government records from public access. Pertinent to this appeal, the statute "exempts from disclosure any information

11

that is protected by any other state or federal statute, regulation, or executive order." Brennan v. Bergen Cty. Prosecutor's Office, 233 N.J. 330, 338 (2018) (citing N.J.S.A. 47:1A-9(a) (stating that OPRA's provisions "shall not abrogate any exemption of a public record or government record from public access" under "any other statute" or "regulation promulgated under the authority of any statute or Executive Order of the Governor")); see also N.J.S.A. 47:1A-1.

Nevertheless, exemptions from disclosure under OPRA should be construed "narrowly." Asbury Park Press v. Cty. of Monmouth, 406 N.J. Super. 1, 8 (App. Div. 2009). The reasons for non-disclosure "must be specific" and courts should not "accept conclusory and generalized allegations of exemptions." Newark Morning Ledger Co. v. N.J. Sports & Exposition Auth., 423 N.J. Super. 140, 162 (App. Div. 2011) (quoting Loigman v. Kimmelman, 102 N.J. 98, 110 (1986)). "The public agency [has] the burden of proving that the denial of access is authorized by law." N.J.S.A. 47:1A-6. "To justify non-disclosure, the agency must make a 'clear showing' that one of the law's listed exemptions is applicable." Lyndhurst, 229 N.J. at 555 (quoting Asbury Park Press v. Ocean Cty. Prosecutor's Office, 374 N.J. Super. 312, 329 (Law Div. 2004)).

We undertake de novo review of "determinations about the applicability of OPRA and its exemptions." N.J. Firemen's Ass'n Obligation, 230 N.J. at 273-74 (citations omitted). We also undertake de novo review of trial court decisions concerning access to government records under the common law right of access. Drinker Biddle & Reath LLP v. Dep't of Law & Pub. Safety, 421 N.J. Super. 489, 497 (App. Div. 2011).

## III.

### A.

The Legislature has declared that personnel records "shall not be considered a government record and shall not be made available for public access," N.J.S.A. 47:1A-10, "unless it falls within one of the statutory" exceptions, Kovalcik, 206 N.J. at 593.

Defendants contend the IA report is a "personnel record" and thus exempt from disclosure, noting it "originated from a specific complaint against [Cosgrove]." The trial court disagreed, concluding the IA reports were unlike typical personnel records such as an employee's pension or sick leave records. We concur with that aspect of the trial court's analysis.

The Attorney General does not consider IA case files and materials to be personnel records. On the contrary, "[p]ersonnel records are separate and

13

distinct from [IA] investigation records, and [IA] investigative reports shall never be placed in personnel records, nor shall personnel records be co-mingled with [IA] files."  IAPP § 9.12.1.  This prohibition applies even where the "complaint is sustained, and discipline imposed." Id. at § 9.12.2.  Accordingly, the IA materials are not exempt from disclosure as "personnel records."

B.

Plaintiff emphasizes OPRA does not contain a specific reference to the IAPP or enumeration of IA investigation reports as documents that are not government records.  However, a literal review of the statute overlooks the depth of the recognized exemptions.

In North Jersey Media Group v. Bergen County Prosecutor's Office, we explained that the available exemptions to disclosure are not limited to "those enumerated as protected categories within the four corners of OPRA" because "N.J.S.A. 47:1A-1 explicitly recognizes that records may be exempt from public access based upon authorities other than the exemptions enumerated within OPRA."  447 N.J. Super. 182, 201-02 (App. Div. 2016).  We further explained that "N.J.S.A. 47:1A-9 codifies the Legislature's unambiguous intent that OPRA not abrogate or erode existing exemptions to public access." Id. at 202.  This includes any "regulation promulgated under the authority of any statute or

Executive Order of the Governor" and "any executive or legislative privilege or grant of confidentiality heretofore established or recognized by the Constitution of this State, statute, court rule or judicial case law." Ibid. (emphasis omitted) (quoting N.J.S.A. 47:1A-9). We emphasized that "the plain language of the statute as well as judicial precedent make it clear that an exemption is statutorily recognized by OPRA if it is established by any of the authorities enumerated in N.J.S.A. 47:1A-1 or -9." Ibid.

"The Attorney General is the State's chief law enforcement officer [with] the authority to adopt guidelines, directives, and policies that bind police departments throughout the State." Lyndhurst, 229 N.J. at 565. These "guidelines, directives or policies cannot be ignored," O'Shea, 410 N.J. Super. at 383, and "are binding upon local law enforcement agencies," Fraternal Order of Police, Newark Lodge No. 12 v. City of Newark, 459 N.J. Super. 458, 500 (App. Div.), certif. granted, 240 N.J. 7 (2019) (emphasis omitted) (citing O'Shea, 410 N.J. Super. at 383; In re Carroll, 339 N.J. Super. 429, 439, 442-43 (App. Div. 2001)).

We recognize that the IAPP along with other Attorney General guidelines, directives, and policies are not adopted in the same way other agencies adopt administrative rules promulgated under the Administrative Procedure Act

(APA), N.J.S.A. 52:14B-1 to -15. However, the IAPP does not consist of "'administrative rules' as defined in N.J.S.A. 52:14B-2(e)," and "do not require formal promulgation under the [APA]." O'Shea, 410 N.J. Super. at 383; accord Carroll, 339 N.J. Super. at 442-43 (holding that the IAPP was "not required to be promulgated pursuant to the APA" because it "fall[s] within the [APA's] statutory exception for 'statements concerning the internal management or discipline of any agency'" (quoting N.J.S.A. 52:14B-2(e))).

IA investigations by law enforcement agencies fall under the supervision of the Attorney General. N.J.S.A. 52:17B-98. The IAPP was adopted pursuant to the authority granted to the Attorney General by N.J.S.A. 40A:14-181, which states: "Every law enforcement agency . . . shall adopt and implement guidelines which shall be consistent with the guidelines governing the [IAPP] . . . ."

The IAPP sets forth the policies, procedures, and best practices that all county and municipal law enforcement agencies are required to follow. IAPP § 1.0.4. See McElwee v. Borough of Fieldsboro, 400 N.J. Super. 388, 395 (App. Div. 2008) (stating that N.J.S.A. 40A:14-181 "requires every law enforcement agency to adopt and implement guidelines consistent with the Attorney General's [IAPP])." A crucial aspect of those policies is the confidentiality of IA investigation case files. With limited exceptions, IA records are accessible

only to IA personnel, the law enforcement agency executive, and the county prosecutor, keeping the number of individuals with access to a minimum. Section 9.6.1 sets forth the following confidentiality requirements:

> The nature and source of internal allegations, the progress of internal affairs investigations, and the resulting materials are confidential information. The contents of an internal investigation case file, including the original complaint, shall be retained in the internal affairs function and clearly marked as confidential. The information and records of an internal investigation shall only be released or shared under the following limited circumstances:
>
> > (a) If administrative charges have been brought against an officer and a hearing will be held, a copy of all discoverable materials shall be provided to the officer and the hearing officer before the hearing;
> >
> > (b) If the subject officer, agency or governing jurisdiction has been named as a defendant in a lawsuit arising out of the specific incident covered by an internal affairs investigation, a copy of the internal investigation reports, may be released to the subject officer, agency or jurisdiction;
> >
> > (c) Upon the request or at the direction of the County Prosecutor or Attorney General; or
> >
> > (d) Upon a court order.

"In addition, the law enforcement [agency's executive officer] may authorize access to a particular file or record for good cause." Id. at § 9.6.2. Such access

should be granted "sparingly, given the purpose of the [IA] process and the nature of many of the allegations against officers." Ibid.

Even Civilian Review Boards have limited access to IA investigations and are subject to strict confidentiality requirements. "Internal investigation case files generally are not releasable to Civilian Review Boards" unless the investigation is "completed or closed," "good cause" is shown, "and the [Board] has in place certain minimum procedural safeguards, as described in Section 9.7.2, to preserve the confidentiality of the requested records and the integrity of the [IA] function, in addition to complying with all other applicable legal requirements." Id. at § 9.7.1.

In turn, Section 9.7.2(b)(1) requires that a Civilian Review Board must meet "in a closed session whenever the content of [IA] records are discussed or testimony or other evidence regarding a specific incident is presented." The Civilian Review Board may not disclose any part of an IA file "to any person who is not a Board member or employee, the law enforcement executive, or a member of the law enforcement agency's [IA] function, except in a final public report appropriately redacted in accordance with instructions from the law enforcement executive." Id. at § 9.7.2(b)(2). Further, "the Civilian Review

Board's final public report . . . may not disclose the personal identity of subject officers, complainants, or witnesses." Id. at § 9.7.2(b)(3).

These comprehensive restrictions are clearly designed to preserve the integrity and confidentiality of all IA investigations.

In accordance with N.J.S.A. 40A:14-181, the UCPO adopted and implemented policies consistent with the IAPP to govern its IA investigations.

The Use of Force Policy issued by the Attorney General "has 'the force of law for police entities.'" Lyndhurst, 229 N.J. at 565 (quoting O'Shea, 410 N.J. Super. at 382). Similar to the Use of Force guidelines examined in Lyndhurst and O'Shea, we conclude the IAPP was created pursuant to such a statutory mandate and has "the force of law in respect of the duties of law enforcement agencies to conform to the requirements" when conducting internal affairs investigations. O'Shea, 410 N.J. Super. at 384.

The trial court noted that the IAPP states that an IA investigation case file may be released by court order. It found that provision "suggest[ed] that in some circumstances, a court may view that an [IA] investigation should be made public" under OPRA and the common law right of access. Although we agree that the court may order the release of an IA investigation case file when

appropriate to do so,[4] IAPP Section 9.6.1(d) does not create an independent substantive basis for release.

Applying these standards, we hold that IA investigation reports and documents are exempt from disclosure under OPRA and reverse the order compelling defendants to produce the complete record of the IA investigation relating to Cosgrove's conduct for in camera review.

The documents plaintiff requested involved internal complaints filed by subordinates against Cosgrove. Accordingly, the resulting IA investigation of Cosgrove's conduct, and potential disciplinary action, "implicate[d] interests beyond those of the parties themselves." Kovalcik, 206 N.J. at 595. Requiring disclosure of such records could well result in far reaching negative impact, impairing the laudable goals of IA investigations.

---

[4] There may be instances where an IA investigation case file is relevant and probative in the defense of criminal charges or the prosecution of a civil action brought under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -42; the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2; or Conscientious Employee Protection Act, N.J.S.A. 34:19-1 to -14. No such circumstances are present here.

A-2573-19T3

There are many reasons for maintaining confidentiality of the complainants, witnesses, and officers involved in an IA investigation. As we recently explained:

> Disclosure of a complainant's identity could thwart an IA investigation, criminal investigation, or prosecution, or could disclose the name of an informant, and could taint an officer who was wrongfully accused. It could also discourage complainants from coming forward, or encourage unwarranted complaints from people seeking notoriety.[5]

> [Fraternal Order of Police, 459 N.J. Super. at 507.]

In addition, disclosure of the complainants, witnesses, and subject officers could: reveal the name and location of inmates and informants, which may

---

[5] Some of these same concerns mirror the need for confidentiality under the Patient Safety Act, N.J.S.A. 26:2H-12.23 to -12.25. The Legislature found that "[f]ear of sanctions induces health care professionals and organizations to be silent about adverse events, resulting in serious under-reporting." N.J.S.A. 26:2H-12.24(e). It "reasoned that health care professionals and other facility staff are more likely to effectively assess adverse events in a confidential setting, in which an employee need not fear recrimination for disclosing his or her own medical error, or that of a colleague." C.A. ex rel. Applegrad v. Bentolila, 219 N.J. 449, 464 (2014). To achieve that result, the Act provides that "[a]ny documents, materials, or information developed by a health care facility as part a process of self-critical analysis conducted pursuant to [N.J.S.A. 26:2H-12.25(b)] shall not be . . . subject to discovery or admissible as evidence or otherwise disclosed in any civil, criminal, or administrative action or proceeding." N.J.S.A. 26:2H-12.25(g)(1).

subject them to harm; discourage complainants from coming forward because they will not maintain anonymity; and encourage unwarranted complaints to seek notoriety or target an officer for reasons other than wrongdoing.

While we recognize that the trial court intended to redact the names and identifying circumstances to protect the complainants and witnesses from retribution and intimidation, that task would likely prove very difficult, if not impossible. See L.R., 452 N.J. Super. at 90 (recognizing that "[u]nder certain circumstances, even the redaction of all personally identifiable information would not prevent reasonable persons . . . from identifying" an individual); Lyndhurst, 441 N.J. Super. at 111 (noting that "[i]n some cases, in camera review of a Vaughn index[6] may be appropriate, because the release of even a 'detailed Vaughn index' to a requesting party 'may in some cases enable astute parties to divine with great accuracy the names of confidential informers, sources, and the like'" (quoting Loigman, 102 N.J. at 111)). Because the

---

[6] "A Vaughn index is comprised of affidavits containing a 'relatively detailed' justification for the claim of privilege being asserted for each document. The judge analyzes the index to determine, on a document-by-document basis, whether each such claim of privilege should be accepted or rejected." Paff v. Div. of Law, 412 N.J. Super. 140, 161 n.9 (App. Div. 2010) (citing Vaughn v. Rosen, 484 F.2d 820, 826-27 (D.C. Cir. 1973). The affidavits "ordinarily" omit "excessive reference to the actual language of the document." Vaughn, 484 F.2d at 826-27.

complainants and witnesses are members of the EPD, their statements disclosing the racist and sexist slurs that Cosgrove uttered, and his other discriminatory actions, would likely disclose their identity or narrow the field to only a few individuals, even if all personally identifiable information is redacted. Other members of the EPD, as well as Cosgrove himself, could probably deduce who reported the behavior.

We question the adequacy of a redaction process that simply deletes "names and circumstances" while leaving other information that would need to be scrubbed from the records to prevent identification of the complainants and witnesses from the redacted document. The identity of those persons can often be readily determined from context or information that a judge conducting an in camera review may deem innocuous. The ability to identify the complainants and witnesses may well impair their safety and otherwise put them at risk of retribution or intimidation.

In addition, as we have noted, disclosure of the IA investigation would discourage complainants and witnesses from coming forward in the future. Particularly in the context of an IA investigation based on employees of a police department complaining of discriminatory treatment by fellow employees or their superior, the fear that anonymity will not be maintained could lead to

employees remaining silent about misconduct, thereby thwarting IA investigations and resulting corrective and disciplinary action.

The trial court alluded to appellants waiving the right to contest disclosure of the IA investigation file due to the public statements made following the conclusion of the investigation. We find no such waiver.

"Generally, waiver is defined 'as the voluntary and intentional relinquishment of a known and existing right.'" Quigley v. KPMG Peat Marwick, LLP, 330 N.J. Super. 252, 267 (App. Div. 2000) (emphasis omitted) (quoting Williston on Contracts, § 39:14 (Lord ed. 2000)). "[T]here must be a clear act showing the intent to waive the right." Cty. of Morris v. Fauver, 153 N.J. 80, 104 (1998) (citing W. Jersey Title & Guar. Co. v. Indus. Tr. Co., 27 N.J. 144, 152 (1958)).

The limited information contained in the statements did not constitute an intentional surrender of the right to assert the IA materials were confidential. The statements did not identify the complainants or witnesses or disclose the details of the internal complaints, the statements of witnesses, or other confidential information. At most, the statements provided confirmation that the investigation substantiated the allegations that Cosgrove had uttered sexually harassing and racist slurs towards EPD employees, and that Cosgrove

should resign. This limited disclosure did not amount to a voluntary and intentional waiver of the confidentiality of the IA investigation.

Finally, we disagree with the trial court's conclusion that "the normal reasons for keeping the [IA] reports secret . . . are not as valid as they would otherwise be" because "[t]he acting prosecutor issued a rather lengthy report about the prosecutor's investigation and findings" and "Elizabeth publicly announced corrective action." The statements made by the UCPO and the Attorney General carefully avoided revealing information that would indirectly identify the complainants and witnesses. The limited information provided did not include the target of the slurs; the specific language used; or the specific date, time, or location of the misconduct. Nor did it describe the circumstances leading up to or following Cosgrove's actions.

Because we hold that the IA investigation file and report are exempt from disclosure under OPRA, we do not reach the issue of attorney's fees.

### C.

OPRA contains a separate exemption for grievances. "A government record shall not include the following information which is deemed to be confidential for the purposes of [OPRA]: . . . information generated by or on behalf of public employers or public employees in connection with any sexual

harassment complaint filed with a public employer or with any grievance filed by or against an individual." N.J.S.A. 47:1A-1.1.[7] Appellants argue that disclosure is precluded under this exemption.

The limited record does not contain the internal complaints filed against Cosgrove or any other part of the IA investigation file. Appellants did not move to supplement the record to include those documents by way of confidential supplemental appendix. We are thus unable to review the format of the internal complaints, the relief sought, whether they were filed pursuant to a collective bargaining agreement, how they were presented, or the process the EPD initially undertook when reviewing them. Consequently, we are effectively prevented from determining if the complaints and resulting investigation fall within OPRA's grievance exemption.

---

[7] We note that the Department of Law and Public Safety adopted a more expansive grievance exception, which precludes OPRA access to any records "specific to an individual employee . . . and relating to or which form the basis of discipline, discharge, promotion, transfer, employee performance, employee evaluation, or other related activities, whether open, closed, or inactive, except for the final agency determination." N.J.A.C. 13:1E-3.2(a)(4). This definition includes an IA investigation file relating to or forming the basis for discipline or discharge based on racially or sexually discriminatory misconduct directed at subordinate employees. We recognize, however, that this regulation applies to the Department of Law and Public Safety, not local law enforcement agencies.

Moreover, appellants have not demonstrated, much less made a "clear showing," that the grievance exemption applies in this matter. Appellants acknowledge that the UCPO's July 2019 denial letter to plaintiff's counsel did not rely upon or even cite OPRA's grievance exemption. See Newark Morning Ledger Co., 423 N.J. Super. at 162 (App. Div. 2011) ("[T]he reasons for withholding documents must be specific. Courts will 'simply no longer accept conclusory and generalized allegations of exemptions.'" (Quoting Loigman, 102 N.J. at 110)). Appellants' briefing to this court likewise fails to adequately address the grievance exemption.[8]

The limited record and appellants' inadequate briefing significantly impedes meaningful appellate review of this issue, which has not been addressed in any published opinion. We therefore decline to address the issue.[9]

---

[8] Appellants each cite the grievance exemption a single time in their appellate briefs: The UPCO asserts "while not explicitly stated in its original denial," it denied "[p]laintiff's records request in accordance with N.J.S.A. 47:1A-1.1[]" which prohibits the disclosure if records concerning the filing of a grievance against an employee"; Elizabeth merely notes that OPRA's exemptions include "records concerning the filing of a grievance by or against a public employee."

[9] Appellate counsel is required to identify and fully brief any issue raised on appeal. See Sackman v. N.J. Mfrs. Ins. Co., 445 N.J. Super. 278, 298 (App. Div. 2016); State v. Hild, 148 N.J. Super. 294, 296 (App. Div. 1977). An argument based on conclusory statements is insufficient to warrant appellate review. Nextel of N.Y., Inc. v. Borough of Englewood Cliffs Bd. of Adjustment, 361

IV.

Plaintiff also sought release of the IA reports under the common law right of access. The trial court did not reach this issue.

The common law right of access reaches a broader class of documents than its statutory counterpart. Higg-A-Rella, Inc. v. Cty. of Essex, 141 N.J. 35, 46 (1995) (citing Atl. City Convention Ctr. Auth. v. S. Jersey Publ'g Co., 135 N.J. 53, 60 (1994)). "To gain access to this broader class of materials, the requestor must make a greater showing than OPRA requires . . . ." Lyndhurst, 229 N.J. at 578. The common law right to access public records hinges on three requirements: "(1) the records must be common-law public documents; (2) the person seeking access must establish an interest in the subject matter of the material; and (3) the citizen's right to access must be balanced against the State's interest in preventing disclosure." Keddie v. Rutgers, 148 N.J. 36, 50 (1997) (citations and internal quotation marks omitted). Furthermore, because the common law right of access to documents is qualified, "one seeking access to such records must 'establish that the balance of its interest in disclosure against

_____

N.J. Super. 22, 45 (App. Div. 2003) (citing Miller v. Reis, 189 N.J. Super. 437, 441 (App. Div. 1983)). "[A]ny privacy concerns about a disclosure sought pursuant to OPRA or the common law should be explained in detail." Paff v. Ocean Cty. Prosecutor's Office, 235 N.J. 1, 28 (2018).

the public interest in maintaining confidentiality weighs in favor of disclosure.'" Ibid. (quoting Home News v. Dep't of Health, 144 N.J. 446, 454 (1996)).

Here, there is no dispute that the IA documents are common law public records. The items sought are "written memorial[s] . . . made by a public officer, and . . . the officer [is] authorized by law to make it." Nero v. Hyland, 76 N.J. 213, 222 (1978) (quoting Josefowicz v. Porter, 32 N.J. Super. 585, 591 (App. Div. 1954)). Plaintiff has the requisite interest in the subject matter of the documents "to further a public good." Loigman, 102 N.J. at 104. Accordingly, the critical factor is whether plaintiff's right to the documents outweighs defendants' interest in preventing disclosure. The balancing of the competing interests in disclosure and confidentiality often involves an "exquisite weighing process." Id. at 108 (citation omitted).

Our Supreme Court provided the following non-exhaustive list of factors to consider in balancing the requester's needs against the public agency's interest in confidentiality:

> (1) the extent to which disclosure will impede agency functions by discouraging citizens from providing information to the government; (2) the effect disclosure may have upon persons who have given such information, and whether they did so in reliance that their identities would not be disclosed; (3) the extent to which agency self-evaluation, program improvement, or other decisionmaking will be chilled by disclosure;

(4) the degree to which the information sought includes factual data as opposed to evaluative reports of policymakers; (5) whether any findings of public misconduct have been insufficiently corrected by remedial measures instituted by the investigative agency; and (6) whether any agency disciplinary or investigatory proceedings have arisen that may circumscribe the individual's asserted need for the materials.

[Loigman, 102 N.J. at 113.]

"To conduct the careful balancing that each case" requires, courts should "look in particular at the level of detail contained in the materials requested." Lyndhurst, 229 N.J. at 580. "More detailed disclosures" present greater concerns. Ibid. To that end, "courts may perform an in camera inspection of the requested records as they balance the relevant factors," L.R., 452 N.J. Super. at 89 (citing Keddie, 148 N.J. at 53-54), and "are authorized to require the redaction of records to maintain confidentiality," Id. at 90 (citing S. Jersey Publ'g Co. v. N.J. Expressway Auth., 124 N.J. 478, 499 (1991)).

When weighing these competing interests, "administrative regulations bestowing confidentiality upon an otherwise public document, although not dispositive of whether there is a common law right to inspect a public record, should, nevertheless, weigh 'very heavily' in the balancing process, as a determination by the Executive Branch of the importance of confidentiality."

Bergen Cty. Improvement Auth. v. N. Jersey Media Grp., Inc., 370 N.J. Super. 504, 521 (App. Div. 2004) (quoting Home News, 144 N.J. at 455). While not an "administrative rule" subject to the APA, the IAPP has the force of law and is binding on local law enforcement agencies, including the UCPO and EPD. It requires local law enforcement agencies to maintain the confidentiality of IA investigation files.[10]

We acknowledge that the common law right of access remains an independent means to obtain government records, id. at 516, and that "[n]othing contained in [OPRA] shall be construed as limiting the common law right of access to a government record, including criminal investigation records of a law enforcement agency," N.J.S.A. 47:1A-8. Nevertheless, a court may consider OPRA's exemptions "as expressions of legislative policy on the subject of confidentiality," provided they do not "heavily influence the outcome of the analysis" under the common law. Bergen Cty. Improvement Auth., 370 N.J. Super. at 520-21. Thus, a court may consider that IA records are exempt under OPRA when considering the common law right of access to such records.

_____

[10] By analogy, pursuant to N.J.A.C. 13:1E-3.2(a)(4), Department of Law and Public Safety records relating to the discipline or discharge of a specific employee are excluded from the definition of government records subject to access under OPRA.

31

Applying these standards, we hold that the need for nondisclosure substantially outweighs plaintiff's need for disclosure of the IA records. Loigman factors one, two, and three militate strongly against disclosure of IA records. In that regard, the same concerns we have previously discussed apply with equal force to the common law right of access. Likewise, the questionable adequacy of protecting anonymity through simple redaction apply equally to the common law right of access.

In addition, pursuant to N.J.S.A. 40A:14-181, the UCPO adopted and implemented guidelines consistent with the IAPP that compel the UCPO to maintain the confidentiality of the IA investigation and report.

Reversed and remanded for the entry of an order consistent with this opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2573-19T3