**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2411-23

IN THE MATTER OF
KEVIN NORTON,
WANAQUE, POLICE
DEPARTMENT.

_____

Submitted December 9, 2025 – Decided December 26, 2025

Before Judges Sumners and Chase.

On appeal from the New Jersey Civil Service Commission, Docket No. 2023-104.

Fusco & Macaluso, PC, attorneys for appellant Kevin Norton (Amie E. DiCola, on the brief).

Dias Law, LLC, attorney for respondent Wanaque Police Department (Sean D. Dias, of counsel and on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent Civil Service Commission (Mark A. Gulbranson, Jr., Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Kevin Norton, a former Wanaque Police Department (WPD) sergeant, appeals the Civil Service Commission's February 28, 2024 final agency decision upholding his forty-five-day suspension and demotion to patrolman. We affirm because the decision was not arbitrary, capricious, or unreasonable.

On May 2, 2021, Norton, a WPD sergeant and the highest-ranking officer in charge of the WPD patrol shift, engaged in a high-speed vehicular pursuit of three motorcyclists. Norton was on a solo patrol in a marked police vehicle when he was passed by a motorcyclist standing on the motorcycle's pegs with his hands on the handlebars. Seconds later, two other motorcycles passed Norton. Norton drove after the motorcyclists, believing they were driving about fifty miles per hour, which was more than the thirty-five-per-hour speed limit, and improperly displaying their license plates, making them "unreadable."

While chasing the motorcycles, Norton's driving reached the speed of eighty-four miles per hour. He continued northbound on highway I-287, weaving between lanes, reaching 106 miles per hour. At one point, Norton passed an uninvolved driver in the left lane, on the right side, travelling ninety-six miles per hour, with his car "only a few feet away from the rear wheel of motorcyclist two." Moments later, Norton sped up to 101 miles per hour. Soon thereafter, Norton approached an uninvolved motorcyclist in the slow lane and

2

entered the right shoulder at 112 miles per hour to pass, as passing on the left would have been too dangerous due to another uninvolved motorist's position. Norton then moved to the left lane and back to the right lane passing fourteen uninvolved vehicles, who applied their brakes, and drove 123 miles per hour in attempting to close the distance between him and one of the motorcyclists. Norton and the motorcyclist continued to weave in and out of lanes with Norton driving 115 miles per hour, braking, and passing other uninvolved vehicles. Norton terminated the pursuit after losing sight of the motorcyclist as well as the two other motorcyclists.

In his ensuing internal investigation report, stating his reasons for initiating the pursuit, Norton wrote: "(1) speed estimated at [fifteen miles per hour] above posted speed limit, (2) first motorcycle to pass engaged in reckless driving when he stood in his seat and continued southbound, and (3) no registrations visible on motorcycles." Norton acknowledged that none of the motorcyclists committed a first- or second-degree crime and he was aware that eluding doesn't provide automatic grounds for a pursuit.

Disciplinary proceedings commenced with a preliminary notice of disciplinary action (PNDA) issued against Norton suspending him for forty-five days and demoting him from sergeant to patrolman. Norton was charged with

violations of N.J.A.C. 4A:2-2.3(a)(1) (incompetency, inefficiency, or failure to perform duties); N.J.A.C. 4A:2-2.3(a)(6) (conduct unbecoming of a public employee); N.J.A.C. 4A:2-2.3(a)(7) (neglect of duty); N.J.A.C. 4A:2-2.3(a)(12) (other sufficient cause); and violations of the New Jersey Attorney General Vehicular Pursuit policy and Wanaque's regulations. Following a departmental hearing on July 8, 2022, a Final Notice of Disciplinary Action (FNDA) sustained the PNDA.

Norton appealed to the Commission, resulting in a fact-finding hearing before an Administrative Law Judge (ALJ). Acting WPD Chief Keith Spillane testified consistently with the facts summarized above. The Division moved into evidence various documents and video footage of the high-speed chase. Norton testified on his own behalf explaining his chase.

The ALJ's initial decision upheld Norton's demotion and forty-five-day suspension. The ALJ found:

> Norton should have understood that he did not have authorization to pursue the violators and engaged in an extended high-speed chase that put himself, the motorcyclists, and uninvolved motorists at risk. Given the department's small size, Norton was often the [Officer in Charge], possessing the authority to terminate the pursuit of an officer he supervised when there was inadequate authorization for the pursuit or where the risk outweighed the need for apprehension.

4

Norton filed exceptions to the ALJ's initial decision.

On February 28, 2024, the Commission adopted the ALJ's findings of facts and conclusions. Citing our Supreme Court's seminal decisions in West New York v. Bock, 38 N.J. 500 (1962) and Henry v. Rahway State Prison, 81 N.J. 571 (1980), the Commission acknowledged it considers progressive discipline "when appropriate," but "where the underlying conduct is of an egregious nature, the imposition of a penalty up to and including removal is appropriate, regardless of an individual's disciplinary history."

The Commission elaborated:

> The Commission agrees with the ALJ's penalty analysis. The upheld misconduct is extremely serious and worthy of a severe sanction, especially given . . . [Norton's] status as a supervisory law enforcement officer. His improper actions posed serious safety concerns and demonstrated a sizable lack of judgment, a quality imperative for a supervisor. Accordingly, the [forty-five] working day suspension and demotion imposed serve as a clear message to . . . [Norton] as to the inappropriateness of his actions, properly strip him of his supervisory duties, and signify that any future misconduct will result in more severe disciplinary action, up to removal from employment.

Before us, Norton argues for the first time that his charges should be dismissed because the WPD violated N.J.S.A. 40A:14-147, by failing to file a complaint within forty-five days after the PNDA, and violated N.J.A.C. 4A:2-

2.5(d), by failing to hold a hearing within thirty days of the PNDA. These newly raised arguments are neither jurisdictional nor do they substantially implicate the public interest, so we decline to consider them. Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (citation omitted).

Even considered, these arguments are without merit because neither the statute nor regulation apply. N.J.S.A. 40A:14-147 only applies to "violation[s] of internal rules and regulations" and here, Norton was charged with violating Civil Service regulations in addition to internal regulations. Since the statute doesn't apply to violations of Civil Service regulations, the forty-five-day limit doesn't apply to Norton's case. N.J.S.A. 40A:14-147; see McElwee v. Borough of Fieldsboro, 400 N.J. Super. 388, 394 (App. Div. 2008) (rejecting plaintiff's contention that his charges were time-barred under N.J.S.A. 40A:14-147 because the statute doesn't apply to violations based on incapacity or misconduct). N.J.A.C. 4A:2-2.5(d) is inapplicable because his departmental hearing was initially timely scheduled, both parties agreed to postpone the hearing beyond the thirty-day time period.

Norton also asserts his suspension and demotion are not supported by the record; and his penalty was disproportionate and violated progressive discipline. We are unpersuaded.

6

Appellate review of an administrative agency decision is limited. In re Herrmann, 192 N.J. 19, 27 (2007). A "strong presumption of reasonableness attaches" to the Commission's decision. In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001) (quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993)). We defer to "[a]n administrative agency's interpretation of statutes and regulations within its implementing and enforcing responsibility." Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001). We only "revers[e] [a final agency decision] if [it is] 'arbitrary, capricious or unreasonable or . . . is not supported by substantial credible evidence in the record as a whole.'" N.J. Soc'y for Prevention of Cruelty to Animals v. N.J. Dep't of Agric., 196 N.J. 366, 384-85 (2008) (alteration in original) (quoting Henry, 81 N.J. at 579-80). We must defer even if we might reach a different result. In re Carter, 191 N.J. 474, 483 (2007) (citing Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). We do not "engage in an independent assessment of the evidence as if [we] were the court of first instance." In re Taylor, 158 N.J. 644, 656 (1999) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)).

Our deference to agency decisions "applies to the review of disciplinary sanctions as well." Herrmann, 192 N.J. at 28. That is because the Commission

7

"is the entity charged with keeping State-government-wide standards of employee performance relatively consistent in disciplinary matters." Id. at 37. As our Supreme Court has made clear, "so long as the discipline . . . falls within a continuum of reasonable outcomes, we must defer, for we have no charge to substitute our judgment for that of the statutorily authorized decisionmaker." In re Hendrickson, 235 N.J. 145, 161 (2018).

Accordingly, "[a] reviewing court should alter a sanction imposed by an administrative agency only 'when necessary to bring the agency's action into conformity with its delegated authority. The Court has no power to act independently as an administrative tribunal or to substitute its judgment for that of the agency.'" Herrmann, 192 N.J. at 28 (quoting In re Polk, 90 N.J. 550, 578 (1982)). Because appellate courts defer to the agency's decisions, reviewing courts should consider "whether such punishment is 'so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness.'" Polk, 90 N.J. at 578 (quoting Pell v. Bd. of Educ., Etc., 34 N.Y.2d 222, 233 (1974)).

Furthermore, "police officers are different from other public employees," City of Jersey City v. Jersey City Police Officers Benevolent Ass'n, 154 N.J. 555, 572 (1998), and are therefore "held to higher standards of conduct than

A-2411-23

other public employees," In re Att'y Gen. L. Enf't Directive Nos. 2020-5 and 2020-6, 465 N.J. Super. 111, 147 (App. Div. 2020) [hereinafter In re Enf't Directives] (citing In re Disciplinary Proc. of Phillips, 117 N.J. 567, 577 (1990)). As such, "public safety concerns" are relevant in determining the appropriateness of discipline. Carter, 191 N.J. at 485 (citing Henry, 81 N.J. at 579-80); accord In re Hall, 335 N.J. Super. 45, 51 (App. Div. 2000).

Applying these principles, we reject Norton's arguments that his discipline was unsupported by the record and disproportionate. The totality of the evidence demonstrates that Norton's pursuit was not justified; none of the motorcyclists committed a first- or second-degree offense warranting a pursuit under the Attorney General's policy or WPD regulations, and his pursuit was unnecessary given the motorcyclists were far ahead of Norton and he had identified the helmets and colors of the bikes for later apprehension. See Off. of the Att'y Gen., New Jersey Vehicular Police Pursuit Policy § (1)(A)(1)(a) to (b) (rev. 2009). To put it mildly, Norton's high speed pursuit was reckless and endangered innocent people without justification. Given that Norton was a supervisor and was often the officer in charge at the WPD, his suspension and demotion was not shocking. In re Enf't Directives, 465 N.J. Super. at 147; Herrmann, 192 N.J. at 29 ("The threshold of 'shocking' the court's sense of

fairness is a difficult one, not met whenever the court would have reached a different result.").

In sum, Norton fails to demonstrate grounds to depart from the well-established principle of deference to the Commission's final agency decision. There is nothing arbitrary, capricious, or unreasonable about the Commission's decision approving Norton's forty-five day suspension and demotion.

To the extent we have not specifically addressed any of Norton's arguments, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(D) and (E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-2411-23